230 P.3d 588 (2010)
STATE of Washington, Respondent,
v.
Michael Eugene PETERSON, Petitioner.
No. 82089-9.
Supreme Court of Washington, En Banc.
Argued January 21, 2010.
Decided May 6, 2010.
*589 Casey Grannis, Nielsen Broman & Koch, P.L.L.C., Seattle, WA, for Petitioner.
Seth Aaron Fine, Snohomish County Prosecutor's Office, Everett, WA, for Respondent.
STEPHENS, J.
¶ 1 Presented as a challenge to the sufficiency of the State's evidence, this case requires us to consider what elements constitute the crime of failure to register as a sex offender (failure to register) under former RCW 9A.44.130 (LAWS OF 2003, ch. 215, § 1).[1] Specifically, we must determine whether a registrant's residential status must be proved at trial and whether the crime is an alternative means crime. We hold that failure to register as a sex offender is not an alternative means crime and that the elements of the crime do not include a registrant's particular residential status. Accordingly, the evidence was sufficient to sustain the defendant's conviction.[2]

FACTS AND PROCEDURAL HISTORY
¶ 2 Michael Peterson was convicted of third degree rape in 1988. As a sex offender, he must register with the sheriff of the county in which he resides pursuant to RCW 9A.44.130. Since Peterson's release from custody in 1991 he has registered numerous times as either having an address or as being homeless. On September 12, 2005, Peterson moved to an apartment in Everett and registered with the Snohomish County Sheriff's Office as required.
¶ 3 On November 2, 2005, an Everett police officer attempted to verify Peterson's address. He learned that Peterson had moved four days earlier and his whereabouts were unknown. On December 6, 2005, Peterson registered as a homeless person with the Snohomish County Sheriff's Office.
¶ 4 The State charged Peterson with failure to register as a sex offender. The first charging document alleged that Peterson failed to report to the county sheriff between November 2 and November 22, 2005. An amended information clarified that Peterson failed to register with the county sheriff within 48 hours of ceasing to have a fixed residence. A second amended information alleged instead that Peterson failed to register within 72 hours of ceasing to reside at his Everett apartment.[3] At trial, the State presented *590 evidence that Peterson vacated the residence on or around November 2, 2005, and did not report to the sheriff until December 6, 2005. The State did not present any evidence concerning Peterson's residential status after leaving his Everett apartment. The to-convict instruction stated, in part, that the jury had to find beyond a reasonable doubt that Peterson failed to "provide written notice to the county sheriff within 72 hours after ceasing to reside" at his previous residence. Clerk's Papers (CP) at 33. A jury found him guilty, and he was sentenced to 15 days of confinement.
¶ 5 Peterson appealed his conviction. The Court of Appeals rejected Peterson's contention that failure to register is an alternative means crime. State v. Peterson, 145 Wash.App. 672, 678, 186 P.3d 1179 (2008). It concluded that the deadlines under RCW 9A.44.130 are not elements of the crime. Id. Peterson petitioned for review, which we granted.[4] 165 Wash.2d 1027, 203 P.3d 379 (2009).

ANALYSIS
¶ 6 Peterson makes two related yet distinct arguments regarding the nature of the crime at issue, one having to do with whether failure to register is an alternative means crime and the other having to do with the elements of the crime that must be proved. We address these arguments separately after discussing the crime of failure to register generally. Finally, we consider whether the evidence here was sufficient to convict.

A. Failure To Register
¶ 7 RCW 9A.44.130(1) requires a person convicted of a sex offense to regularly register his whereabouts in a county with that county's sheriff. When an offender vacates or otherwise leaves his or her residence, the statute sets forth various time limits for reregistration, depending on the offender's residential status. For example, an offender who becomes homelessthat is, who lacks a fixed residencemust register within 48 hours of leaving a fixed residence, whereas an offender who moves from one fixed residence to another within a county has 72 hours to register. Compare RCW 9A.44.130(6)(a) with RCW 9A.44.130(5)(a). Following a move, the longest grace period available to an offender is 10 days.[5] All deadlines exclude weekends and holidays. Id.
¶ 8 The purpose of the registration requirement is to aid law enforcement by providing notice of the whereabouts of convicted sex offenders within the law enforcement agency's jurisdiction. LAWS OF 1990, ch. 3, § 401.

1. Is failure to register an alternative means crime?

¶ 9 Peterson claims that the various deadlines and entities with which an offender must register represent alternative means of committing the crime. He claims his right to jury unanimity was violated because substantial *591 evidence did not support each alternative means of failure to register.
¶ 10 An alternative means crime is one "that provide[s] that the proscribed criminal conduct may be proved in a variety of ways." State v. Smith, 159 Wash.2d 778, 784, 154 P.3d 873 (2007).
[W]hen the crime charged can be committed by more than one means, the defendant does not have a right to a unanimous jury determination as to the alleged means used to carry out the charged crime or crimes should the jury be instructed on more than one of those means. . . . But, in order to safeguard the defendant's constitutional right to a unanimous verdict as to the alleged crime, substantial evidence of each of the relied-on alternative means must be presented.
Id. at 783, 154 P.3d 873 (emphasis added) (citing State v. Kitchen, 110 Wash.2d 403, 410-11, 756 P.2d 105 (1988)).
¶ 11 The legislature has not statutorily defined alternative means crimes, nor specified which crimes are alternative means crimes. This is left to judicial determination. "[T]here simply is no bright-line rule by which the courts can determine whether the legislature intended to provide alternate means of committing a particular crime. Instead, each case must be evaluated on its own merits." State v. Klimes, 117 Wash. App. 758, 769, 73 P.3d 416 (2003). An example of an alternative means crime is theft because it may be committed by (1) wrongfully obtaining or exerting control over another's property or (2) obtaining control over another's property through color or aid of deception. State v. Linehan, 147 Wash.2d 638, 644-45, 647, 56 P.3d 542 (2002).
¶ 12 Peterson argues that failure to register is an alternative means crime because it can be accomplished in three different ways: (1) failing to register after becoming homeless, (2) failing to register after moving between fixed residences within a county, or (3) failing to register after moving from one county to another. This is too simplistic a depiction of an alternative means crime, as a comparison between theft and failure to register makes plain. The alternative means available to accomplish theft describe distinct acts that amount to the same crime. That is, one can accomplish theft by wrongfully exerting control over someone's property or by deceiving someone to give up their property. In each alternative, the offender takes something that does not belong to him, but his conduct varies significantly. In contrast, the failure to register statute contemplates a single act that amounts to failure to register: the offender moves without alerting the appropriate authority. His conduct is the samehe either moves without notice or he does not. The fact that different deadlines may apply, depending on the offender's residential status, does not change the nature of the criminal act: moving without registering.
¶ 13 The mere use of a disjunctive in a statute does not an alternative means crime make. In re Pers. Restraint of Jeffries, 110 Wash.2d 326, 339, 752 P.2d 1338 (1988). Here, the different deadlines in the statute, while presented in the disjunctive, do not implicate alternate criminal acts. There is only one method by which an offender fails to register, and that is if he moves from his residence without notice.
¶ 14 Our analysis differs from the Court of Appeals'. It seemed to conclude that failure to register is an alternative means crime, but that the different deadlines based on various residential scenarios are not themselves alternatives, but rather define "the requirements for amending the registration" upon moving. Peterson, 145 Wash.App. at 678, 186 P.3d 1179. It may be that in making this statement, the Court of Appeals was guided by our observation that "[d]efinition statutes do not create additional alternative means of committing an offense." Linehan, 147 Wash.2d at 646, 56 P.3d 542. But it is not necessary to draw a distinction between alternatives and definitions of alternatives where the crime at issue is not an alternative means crime at all. We hold that the failure to register is not an alternative means crime.[6]

*592 2. What are the elements of failure to register?

¶ 15 In concluding that the deadlines and residential scenarios in the failure to register statute are not alternative means, the Court of Appeals also concluded that they are not elements of the crime. Peterson, 145 Wash. App. at 678, 186 P.3d 1179. As noted above, although these questions are related, they should be analyzed separately.
¶ 16 For the purposes of this case, we need not examine every deadline and residential scenario potentially at issue under RCW 9A.44.130. We need decide only whether residential status is an element because this is the element that Peterson primarily claims the State failed to prove. The State charged, instructed, and provided evidence on the 72-hour deadline.[7]
¶ 17 Peterson contends that under RCW 9A.44.130(6)(a), "the state needed to prove the fact that Peterson was homeless" and that under RCW 9A.44.130(5)(a), "the state needed to prove the fact that Peterson moved to a residential address without properly notifying authorities." Suppl. Br. of Pet'r at 10. This is because, according to Peterson, "[a] person's residential status determines that person's legal obligations to register under the statute. . . . If the state cannot prove residential status, it cannot prove an obligation to register within a certain deadline with certain authorities as required by either (5)(a) or (6)(a)." Id. at 11.
¶ 18 The elements of a crime are commonly defined as "`[t]he constituent parts of a crime[usually] consisting of the actus reus, mens rea, and causationthat the prosecution must prove to sustain a conviction.'" State v. Fisher, 165 Wash.2d 727, 754, 202 P.3d 937 (2009) (quoting BLACK'S LAW DICTIONARY 559 (8th ed.2004)). Although Peterson is correct that a registrant's residential status informs the deadline by which he must register, it is possible to prove that a registrant failed to register within any applicable deadline without having to specify the registrant's particular residential status. That is what happened here. Peterson registered outside of any deadline contained in the statute. It was therefore unnecessary to show his particular residential status in order to prove a violation of the statute.
¶ 19 The to-convict instruction submitted to the jury specified that Peterson failed to register within 72 hours. Sufficient evidence in the record supported this contention. Verbatim Report of Proceedings (Vol. I) at 19-35, 63. Peterson's argument now appears to be that the jury had no way of knowing whether the 72-hour deadline applied to him. Without knowing his residential status, it is possible he had, for example, 10 days to register if he moved from one county to another.[8] While this argument has some initial appeal, it rests on the faulty premise that residential status is an element of the crime. In this case, Peterson's specific residential status was not essential to proving the criminal act at issue: that he failed to provide timely notice of his whereabouts under any of the statutorily defined deadlines after vacating his registered address.
¶ 20 In support of his argument, Peterson cites three Court of Appeals cases in which an offender's residential status was pivotal. Suppl. Br. of Pet'r at 10-12 (citing State v. Pickett, 95 Wash.App. 475, 975 P.2d 584 *593 (1999); State v. Bassett, 97 Wash.App. 737, 987 P.2d 119 (1999); State v. Stratton, 130 Wash.App. 760, 124 P.3d 660 (2005)). These cases are distinguishable. In Pickett and Bassett, the Court of Appeals took umbrage with the fact that the sex offender registration statute failed to offer offenders with no fixed residence a way to comply with the statute, i.e., one could not register as homeless. Pickett, 95 Wash.App. at 479, 975 P.2d 584; Bassett, 97 Wash.App. at 739-40, 987 P.2d 119 (citing Pickett, 95 Wash.App. at 476, 975 P.2d 584). This failing has since been remedied by the legislature. LAWS OF 1999, 1st Sp. Sess., ch. 6, § 1. Pickett and Bassett do not hold or otherwise imply that an offender's residential status is an element that must be proved in order to sustain a conviction. Likewise, Stratton does not suggest that residential status is an element that must be proved. There, the defense presented evidence that the offender was still residing at his fixed residence, albeit in a car in the driveway. Stratton, 130 Wash.App. at 763-64, 124 P.3d 660. Because the offender had never moved in the first place, the duty to register was not triggered and no crime had been committed. Id. at 766-67, 124 P.3d 660.
¶ 21 The Court of Appeals here recognized that requiring the State to prove an offender's new residential status would frustrate the failure to register statute. Peterson, 145 Wash.App. at 677, 186 P.3d 1179.
Because the State cannot account for Peterson's whereabouts between the time he left his Everett apartment and registered as homeless, the State cannot prove [which of the statutory deadlines applies]. Since Peterson failed to register for more than 30 days, he clearly violated his duty to keep his registration current under all options in the statute. Yet, under Peterson's theory he could not be convicted of violating any one of them.
Id. The purpose of the sex offender registration statute is to aid law enforcement in keeping communities safe by requiring offenders to divulge their presence in a particular jurisdiction. LAWS OF 1990, ch. 3, § 401. The criminal punishment attendant to failure to register helps effectuate this purpose. The Court of Appeals correctly observed that allowing individuals to escape punishment when they have failed to register within the prescribed deadlines is an absurd reading of the statute. Peterson, 145 Wash.App. at 677, 186 P.3d 1179 (citing State v. Ammons, 136 Wash.2d 453, 457, 963 P.2d 812 (1998) (noting that courts cannot construe statutes in a matter that renders them absurd)). Reduced to its essentials, Peterson's argument is that an offender who successfully hides his whereabouts after moving cannot be convicted of failure to register despite clear evidence that he failed to register within any statutorily prescribed deadline. We reject this argument and hold that residential status is not an element of the crime of failure to register.

B. Sufficiency of the Evidence
¶ 22 Having concluded that failure to register is not an alternative means crime, and that residential status is not an element of the crime, it is clear that the State presented sufficient evidence to convict Peterson of the crime of failure to register. The prosecution charged Peterson with violating the 72-hour registration deadline. The evidence the State presented at trial proved that Peterson had not registered within 72 hours, specifically that he did not register until December 6, 2005. Having left his residence on November 2, 2005, he was outside of any of the statutorily prescribed deadlines when he finally registered. Accordingly, we hold that there was sufficient evidence to convict Peterson of the crime of failure to register.

CONCLUSION
¶ 23 Failure to register is not an alternative means crime, and an offender's residential status is not an element of the crime of failure to register. The evidence was sufficient to convict Peterson, and we affirm the Court of Appeals.
WE CONCUR: MADSEN, C.J., C. JOHNSON, ALEXANDER, SANDERS, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, JJ.
NOTES
[1] This was the version of RCW 9A.44.130 in effect at the time of Michael Peterson's offense. All references to the registration statute are to the former 2003 version unless otherwise specified. The language of the current statute is substantially similar.
[2] Peterson also claims he received ineffective assistance of counsel because counsel neglected to object to a defective jury instruction. Peterson's case was dismissed without prejudice by the Court of Appeals on grounds unrelated to this issue. We do not know how the jury will be instructed on retrial as this will depend on how the matter is eventually charged. We therefore decline to review Peterson's ineffective assistance of counsel claim.
[3] Although it amended the information twice, the State failed to include the necessary knowledge element in either of the revised charging documents. On appeal, the State conceded that the second amended information was defective, and the Court of Appeals therefore reversed the conviction and dismissed the case without prejudice.
[4] The Court of Appeals dismissed without prejudice because the State appropriately conceded that Peterson's charging document was defective in light of the missing knowledge element. The Court of Appeals nonetheless reviewed the merits of Peterson's arguments concerning the other elements of failure to register because they were likely to arise on retrial. In its answer to Peterson's petition for review, the State urged this court to deny review of these issues, arguing they are not ripe for consideration because a new charging document will be filed, eventually requiring a new to-convict instruction. Answer to Pet. for Review at 6.

We conclude these issues are appropriate for our review. Peterson argues that the evidence against him was insufficient to sustain a conviction precisely because the State did not prove required elements of the crime. Pet. for Review at 19. If he is correct, the remedy is dismissal with prejudice. State v. DeVries, 149 Wash.2d 842, 853, 72 P.3d 748 (2003). The State would not get another chance to remedy its defective information and prosecute Peterson again. In order to determine whether the evidence against Peterson was sufficient to sustain a conviction, we must address his claims regarding alternative means and the elements of the crime of failure to register.
[5] In the case of an offender who is moving from one county to another, the offender must, at least 14 days before moving, send notice to the sheriff of the new county; register with the new county sheriff within 24 hours of taking up residence in the new county; and send written notice within 10 days of the change of address to the former county's sheriff. RCW 9A.44.130(5)(a).
[6] It should also be noted that Peterson has not shown that this case was tried as an alternative means case. Cf. Smith, 159 Wash.2d at 783, 790, 154 P.3d 873 (noting that even an alternative means crime will not be analyzed as such if a single means was elected at trial); CP at 33 (instructing jury as to one deadline).
[7] Common sense suggests the statutory deadline is part of the State's burden of proof. It would not be sufficient for the State to prove failure to register within 24 hours, for example. Suppl. Br. of Pet'r at 7-8, 16. But we need not decide this particular question. The issue before us is whether the offender's residential status must be proved in order to convict. Peterson also seems to claim that the particular county sheriff to which one must give notice is an element of the crime because an offender's deadline is different depending on if he moves outside of his county or within it. See id. at 7-8. But because the jury instruction here included the 72-hour deadline, it is clear that the sheriff identified in the instruction was the sheriff of the county in which the trial took place. See RCW 9A.44.130(5)(a). Where an allegation involves a cross-county move, greater specificity may be required.
[8] It should be noted, however, that in that scenario Peterson still would have had to register with the sheriff of the county to which he moved within 24 hours of moving.