# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STATE OF WASHINGTON,

Respondent,

v.

KORAN RASHAD BUTLER,

Appellant.

No. 46935-9-II

PART PUBLISHED OPINION

WORSWICK, P.J. — Koran Butler appeals his convictions and sentence for forgery, second degree identity theft, and attempted second degree theft. He primarily argues that the trial court violated his constitutional right to a unanimous verdict by not issuing a unanimity instruction because the State provided insufficient evidence of one of the alternative means of committing identity theft. In the published portion of this opinion we hold that identity theft is not an alternative means crime. In the unpublished portion of this opinion we consider and reject Butler's arguments regarding the trial court's reasonable doubt instruction, ineffective assistance of counsel, and legal financial obligations (LFOs). We affirm Butler's convictions.

## FACTS

On February 3, 2014, Koran Butler attempted to cash a check at Heritage Bank in Tacoma. The check was made out for $1,500 and was to be paid to "K. Butler" for "auto work." Verbatim Report of Proceedings (VRP) (Oct. 28, 2014) at 78. Assistant branch manager, Marlene Wheeler, compared the signature on the check to the account holder's on-file signature and concluded the signatures did not match. Law enforcement officers arrived at Heritage Bank and arrested Butler.

The State charged Butler with second degree identity theft, forgery, and attempted second degree theft. The jury found Butler guilty of all three charges.

ANALYSIS

Butler argues that the trial court instructed the jury on alternative means of committing identity theft without including a unanimity instruction, and because the State presented insufficient evidence to prove one of the alternative means, Butler's constitutional right to a unanimous verdict was violated. Butler did not object to the trial court's jury instructions or request a unanimity instruction. Generally we will not review claims raised for the first time on appeal unless the party claiming the error can show the presence of an exception to that rule, such as a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011); *State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009). However, even assuming Butler can raise this claim for the first time on appeal, we hold that identity theft is not an alternative means crime and no unanimity instruction was necessary. Therefore, Butler's claim fails.

"An 'alternative means crime' is one 'that provide[s] that the proscribed criminal conduct may be proved in a variety of ways.'" *State v. Peterson*, 168 Wn.2d 763, 769, 230 P.3d 588 (2010) (alteration in original) (quoting *State v. Smith*, 159 Wn.2d 778, 784, 154 P.3d 873 (2007)). Because the legislature has not defined what constitutes an alternative means crime, whether a statute provides an alternative means for committing a particular crime is left to judicial determination. *Peterson*, 168 Wn.2d at 769. We review questions of statutory interpretation de novo and interpret statutes to give effect to the legislature's intentions. *State v. Bunker*, 169 Wn.2d 571, 577-78, 238 P.3d 487 (2010).

There is no bright-line rule for making this determination and we must evaluate each case on its own merits. *Peterson*, 168 Wn.2d at 769. "The statutory analysis focuses on whether each alleged alternative describes 'distinct acts that amount to the same crime.'" *State v. Sandholm*, 184 Wn.2d 726, 734, 364 P.3d 87 (2015) (quoting *Peterson*, 168 Wn.2d at 770). The more varied the criminal conduct, the more likely the statute describes alternative means. *Sandholm*, 184 Wn.2d at 734. Thus, we focus our analysis on the different underlying acts that could constitute the same crime. *State v. Owens*, 180 Wn.2d 90, 96-97, 323 P.3d 1030 (2014). The various underlying acts must vary significantly to constitute distinct alternative means. 180 Wn.2d at 97. But when the statute describes minor nuances inhering in the same act, the more likely the various "alternatives" are merely facets of the same criminal conduct. *Sandholm*, 184 Wn.2d at 734. Merely stating methods of committing a crime in the disjunctive does not mean that there are alternative means of committing a crime. *State v. Lindsey*, 177 Wn. App. 233, 240-41, 311 P.3d 61 (2013). A statute divided into subparts is more likely to designate alternative means. 177 Wn. App. at 241. We place less weight on the use of the disjunctive "or" and more weight on the distinctiveness of the criminal conduct. *Sandholm*, 184 Wn.2d at 726.

We begin our review by analyzing the language of the criminal statute at issue. *See Owens*, 180 Wn.2d at 96. RCW 9.35.020 reads:

> (1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.
> . . . .
> (3) A person is guilty of identity theft in the second degree when he or she violates subsection (1) of this section under circumstances not amounting to identity theft in the first degree.

Butler contends the use of four different verbs in the statute—obtain, possess, transfer, and use—establish that the crime is committable in more than one way, and is therefore an

3

alternative means crime. Butler's argument is similar to the one our Supreme Court rejected in *Owens*. 180 Wn.2d at 99. The statute addressed in *Owens* provided that a person who "knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property, is guilty of trafficking in stolen property in the first degree." RCW 9A.82.050(1). There, the defendant argued that the eight different verbs articulated eight alternative means for committing the crime of first degree trafficking in stolen property. *Owens*, 180 Wn.2d at 95-96. He argued that his conviction had to be reversed because the State charged all eight and there was not substantial evidence to support each means charged. 180 Wn.2d at 95-96.

Relying on the placement of the word "knowingly" in two different positions in the list of verbs, the *Owens* court concluded that the statute articulated only two alternative means, not eight. 180 Wn.2d at 99. The court also pointed out that the first seven verbs were so closely related they did not really address distinct acts:

> For example, it would be hard to imagine a single act of stealing whereby a person "organizes" the theft but does not "plan" it. Likewise, it would be difficult to imagine a situation whereby a person "directs" the theft but does not "manage" it. Any one act of stealing often involves more than one of these terms. Thus, these terms are merely different ways of committing one act, specifically stealing. Consistent with *Peterson*, where the various acts of moving without giving proper notice were too similar to constitute distinct alternative means, an individual's conduct under RCW 9A.82.050(1) does not vary significantly between the seven terms listed in the first clause.

*Owens*, 180 Wn.2d at 99; *see Peterson*, 168 Wn.2d 763.

Here, the four verbs describing identity theft are like the seven verbs that described the first alternative means of trafficking in stolen property in *Owens*. The verbs here are not distinct means by which to commit identity theft, but rather are multiple facets of a single means. For instance, following the analysis in *Owens*, it would be hard to imagine the crime of identity theft

4

being committed by a single act of "using" a check that did not also involve "obtaining" and "possessing" the check. Likewise, one could not "transfer" financial information without also "obtaining" and "possessing" that information.

Butler attempts to distinguish these verbs from those in *Owens* by arguing that one could "obtain" financial information without "using" or "transferring" it. Reply Br. of Appellant 6. However, not every verb must overlap in order to constitute a single means. For instance, in *Owens* it could be said that one could "supervise" the theft without "financing" it. *See* 180 Wn.2d at 99. Because no single action in the statute could be completed without simultaneously completing at least one other action, the various acts are too similar to constitute distinct alternative means. *See* 180 Wn.2d at 99.

We hold that identity theft is not an alternative means crime, and therefore the trial court did not err by not issuing a unanimity instruction.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## ADDITIONAL FACTS

At Butler's trial, the court issued the following "to convict" jury instruction for second degree identity theft:

> To convict the defendants [sic] of identity theft in the second degree, the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 3rd day of February, 2014, the defendant knowingly obtained, possessed, transferred, or used a means of identification or financial information of another person, living or dead, to-wit: Patricia Gann;
> (2) That the defendant acted with the intent to commit, or aid or abet, any crime; and
> (3) That any of these acts occurred in the State of Washington.
> If you find from the evidence that each of these elements have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 22. The trial court did not issue a unanimity instruction. Butler neither objected to the use of this instruction nor proposed an alternative instruction.

The trial court also instructed the jury as to reasonable doubt, using Washington's pattern instruction for reasonable doubt:

The defendant has entered a plea of not guilty. That plea puts in issue every element of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists as to these elements.
A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

CP at 16; See 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 4.01, at 85 (3d ed. 2009) (WPIC). Butler neither objected to the use of the pattern instruction nor proposed a different instruction.

At sentencing, Butler stipulated to the State's calculation of his offender score, which did not recognize his second degree identity theft and forgery convictions as the same criminal conduct. The sentencing court ordered Butler to pay $1,550 in LFOs. Butler did not object to the imposition of LFOs.

ADDITIONAL ANALYSIS

I. "REASONABLE DOUBT" INSTRUCTION

Butler argues that the trial court's reasonable doubt instruction infringed on his Fourteenth Amendment right to due process. We decline to consider this argument.

6

Butler did not comply with CrR 6.15(c) by failing to timely object to the trial court's instruction on the definition of reasonable doubt. CrR 6.15(c) requires timely and well-stated objections to jury instructions "'in order that the trial court may have the opportunity to correct any error.'" *State v. Scott*, 110 Wn.2d 682, 686, 757 P.2d 492 (1988) (quoting *Seattle v. Rainwater*, 86 Wn.2d 567, 571, 546 P.2d 450 (1976)). As previously mentioned, we will not review claims raised for the first time on appeal, unless the party claiming the error can show the presence of an exception to that rule, such as a manifest error affecting a constitutional right. RAP 2.5(a)(3); *Robinson*, 171 Wn.2d at 304; *O'Hara*, 167 Wn.2d at 97-98. Butler must show that the error is both manifest and that it implicates a specifically identified constitutional right. *O'Hara*, 167 Wn.2d at 98.

Butler does not identify a manifest error in the challenged instruction. Here, the instruction issued by the trial court followed the language of WPIC 4.01 exactly. In 2007, our Supreme Court directed that trial courts use WPIC 4.01 to instruct the jury on the burden of proof and the definition of reasonable doubt. *State v. Bennett*, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). By providing the jury with WPIC 4.01, the trial court complied with our Supreme Court's explicit directive.

Butler cannot show that following the Supreme Court's directive was a manifest error implicating one of his specifically identified constitutional rights. Therefore, his challenge fails to fall within the very limited scope of RAP 2.5(a)(3) and, as such, we do not address the challenge for the first time on review.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Butler next argues his trial counsel rendered ineffective assistance by stipulating to an improper offender score. Butler argues that his identity theft and forgery offenses constituted the

same criminal conduct for sentencing purposes and should have together counted as one point. We disagree.

Because ineffective assistance of counsel claims present mixed questions of law and fact, we review them de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To show ineffective assistance of counsel, a defendant must show that defense counsel's conduct was deficient, and that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Reichenbach*, 153 Wn.2d at 130. "The threshold for the deficient performance prong is high, given the deference afforded to [the] decisions of defense counsel in the course of representation." *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

Butler cannot prove his counsel performed deficiently because the court properly calculated his offender score. "Same criminal conduct" exists when "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). All three elements must be satisfied to find two crimes to be the same criminal conduct. *State v. Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013).

Here, Butler's identity theft had one victim, Patricia Gann, because Butler used financial information of only Gann when he presented the checks. *See State v. Fisher*, 139 Wn. App. 578, 584, 161 P.3d 1054 (2007) (identity theft is committed against each person whose identity has been stolen). In contrast, the forgery had two victims, Gann and Heritage Bank. *See State v. Calvert*, 79 Wn. App. 569, 580, 903 P.2d 1003 (1995) (both the account holder and the bank are victims of a forgery involving bad checks). Because these crimes had different victims, they did

not involve the same criminal conduct. *State v. Webb*, 112 Wn. App. 618, 624, 50 P.3d 654 (2002). Therefore, counsel's stipulation was reasonable and not deficient performance.

### III. LEGAL FINANCIAL OBLIGATIONS

Butler argues that the sentencing court improperly imposed LFOs without considering his ability to pay. Butler did not challenge this finding during sentencing and, thus, he cannot do so as a matter of right for the first time on appeal. *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013), *remanded*, 182 Wn.2d 827 (2015). Our decision in *Blazina*, over a year before Butler's November 2014 sentencing hearing, provided notice that the failure to object to LFOs imposed at sentencing waived the issue on appeal. 174 Wn. App. at 911. As our Supreme Court noted in reviewing our decision in *Blazina*, an appellate court may in its discretion decline to reach such unpreserved claims of error. *Blazina*, 182 Wn.2d at 830.

The record reflects that at the sentencing hearing, the State initially requested $2,300 in LFOs. After hearing from Butler that at the time of the crime he was employed as a licensed pharmacy technician, the sentencing court ultimately reduced the LFOs to $1,550. In light of the sentencing court's colloquy and the subsequent reduction in LFOs, and because Butler had sufficient notice of his obligation to object to LFOs imposed at sentencing to preserve the issue for appeal, we exercise our discretion and decline to address Butler's contention regarding his LFOs for the first time on appeal.

Because identity theft is not an alternative means crime, Butler failed to preserve his reasonable doubt jury instruction argument, Butler's counsel was not ineffective, and Butler failed to preserve his LFO argument, we affirm his conviction and sentence.

## IV. APPELLATE COSTS

Butler filed a supplemental brief requesting that, if the State substantially prevails in this appeal, we decline to impose appellate costs on him because he claims he is indigent. The State did not respond. We exercise our discretion and decline to impose appellate costs.

Under former RCW 10.73.160(1) (1995), we have broad discretion whether to grant or deny appellate costs to the prevailing party. *State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000); *State v. Sinclair*, 192 Wn. App. 380, 388, ___ P.3d ___ (2016). Ability to pay is an important factor in the exercise of that discretion, although it is not the only relevant factor. *Sinclair*, 192 Wn. App. at 389.

It appears from the limited trial court record that Butler does not have the present ability to pay appellate costs and it is questionable whether he will have the future ability to pay. The trial court found Butler indigent at trial, and counsel was appointed to represent Butler on appeal. The record does not support, nor does the State argue, that Butler's indigent status is likely to change. RAP 15.2(f).

Under the specific circumstances of this case, we decline to impose appellate costs on Butler.

Worswick, P.J.

We concur:

Johanson, J.

Lee, J.

10