2017 FEB 27 AM 10: 33

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 73563-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| TIFFANY L. MARTIN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 27, 2017 |
| | ) | |

MANN, J. — Tiffany Martin appeals her conviction for identity theft assigning error to the trial court's use of an alternative means jury instruction without providing a corresponding unanimity instruction. Martin also appeals the trial court's order denying her motion to suppress the evidence obtained after the police seized the vehicle she was using at the time of her arrest. Because identity theft is not an alternative means crime and the police had probable cause to believe that the vehicle contained evidence of a crime, we affirm.

## FACTS

On April 4, 2014, shortly before 1:00 a.m., Bellevue police officers were dispatched to a suspicious circumstances call from a Shell gas station. A witness reported that a dark colored sedan backed up to a garbage can on the side of the gas

station. The witness reported that a male and female were going through purses and putting some of the contents into a clear plastic bin and other items into the garbage can. The witness later told the police that when the man saw the officers arriving he placed the plastic bin in the trunk and tried unsuccessfully to close the trunk.

Bellevue Police Officer Jacob Childers responded first. When he initially drove by the gas station he saw two people digging around in the back seat of a dark sedan. When Childers approached the car, he saw a man standing at the back of the car with the trunk open and a woman sitting in the back seat. Childers noticed several purses and wallets inside the trunk, stacked on top of a plastic bin. Childers saw three or four cell phones, flashlights, screwdrivers, wallets, an empty purse, and a laptop bag inside the cab of the car. He also saw several knives inside the car, including one within the woman's reach, which he seized for safety purposes. Childers reported that screwdrivers, flashlights, and knives are commonly found in cars of people engaged in vehicle prowling or burglary.

Bellevue Police Officer Brian Schaffer arrived shortly after Childers. As he approached the car, he could see two or three purses and a backpack in the trunk. He saw screwdrivers, flashlights, an empty laptop case, four cell phones, two wallets, and an empty black purse in the cab of the car. Schaffer believed the cell phones, wallets, bags, and purses might have been stolen in vehicle prowls. He also reported that screwdrivers were often used to pry open windows and car doors. Schaffer believed the car likely contained stolen property and the items in the car were consistent with vehicle prowl or identity theft.

When approached by officers, the male identified himself as Jontel Jackson. The woman in the back seat claimed her name was Alicia Staton but was later identified as Tiffany Martin. Childers recognized Jackson from a previous contact about two years prior. Childers served a search warrant on the car Jackson and Martin were using and found a large plastic tub of stolen mail in the trunk, along with stolen credit cards and financial information. Jackson was later convicted of identity theft. Childers believed that the woman in the car was actually Tiffany Martin, but he was not sure.

Jackson declined to allow a search of the car. The officers released Martin and Jackson; but had the car impounded so they could obtain a search warrant. Schaffer obtained the warrant later that day and searched the car. The search revealed a screwdriver, flashlight, pry bar, cell phones, wallets containing Jackson's and Martin's information, credit cards in other people's names, receipts for gift cards and other purchases using various credit cards, purses and bags, and a binder and ledger containing other people's names, addresses, social security numbers, account numbers, birth dates, checks, and credit cards.

Martin was charged with eight counts of second degree identity theft under RCW 9.35.020. Before trial, Martin moved to suppress the evidence found in the car, arguing that the search and seizure of the car was unconstitutional because the police did not have probable cause. The court denied the motion. At the conclusion of trial, the trial court provided the following instruction to the jury:

> A person commits the crime of identity theft in the second degree when, with intent to commit or aid or abet any crime, he or she knowingly obtains, possesses, uses or transfers a means of identification or financial information of another person, living or dead, knowing that the means of identification or financial information belongs to another person.

-3-

The to-convict instructions for each of the eight counts stated in relevant part: "(1) [t]hat on or about April 4, 2014, the defendant knowingly obtained, possessed, or transferred a means of identification or financial information" of each named victim. The instructions defined "possession," but did not provide definitions for "obtain" or "transfer."

The jury found Martin guilty of all eight counts as charged.

## ANALYSIS

### I

Martin argues first that her state constitutional right to jury unanimity was violated because the jury was instructed on alternative means of committing identity theft without including a unanimity instruction requiring the jury to find which of the alternative means it relied upon in reaching the conviction. We disagree.

The alternative means determination relates to the constitutionally protected right of jury unanimity required under article I, section 21 of the Washington Constitution. State v. Owens, 180 Wn.2d 90, 95, 323 P.2d 1030 (2014). An alternative means crime is one where there are multiple means of proving the charge. Owens, 180 Wn.2d at 96. When there are multiple means of proving the crime, a defendant is entitled to an express unanimous jury determination as to which particular means he or she is guilty of committing, unless there is sufficient evidence to support each of the alternative means. Owens, 180 Wn.2d at 95 (citing State v. Ortega-Martinez, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994)).

The legislature has not defined what constitutes an alternative means crime or designated which crimes are alternative means crimes. Owens, 180 Wn.2d at 96. Therefore, it is up to the courts to determine whether the crime is an alternative means crime by reviewing each case on its own merits. Owens, 180 Wn.2d at 96. We review questions of statutory interpretation de novo and interpret statutes to give effect to the legislature's intentions. State v. Bunker, 169 Wn.2d 571, 577-78, 238 P.3d 487 (2010).

Use of a disjunctive "or" in a list of methods for committing the crime does not necessarily create alternative means of committing the crime. State v. Peterson, 168 Wn.2d 763, 770, 230 P.3d 588 (2010). The analysis places less weight on the use of the disjunctive "or" and more weight on the distinctiveness of the criminal conduct. State v. Sandholm, 184 Wn.2d 726, 735, 364 P.3d 87 (2015). "The more varied the criminal conduct, the more likely the statute describes alternative means. But when the statute describes minor nuances inhering in the same act, the more likely the various 'alternatives' are merely facets of the same criminal conduct." Sandholm, 184 Wn.2d at 734.

We begin our review by analyzing the language of the criminal statute at issue. Owens, 180 Wn.2d at 96. RCW 9.35.020(1) provides:

> No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.

(Emphasis added.) Martin contends that the use of four different verbs in the statute— obtain, possess, use, or transfer—establishes that there are four alternative means of committing the crime. And because the State was unable to prove that she

"transferred" any of the identification or financial information, the conviction must be overturned.

Our Supreme Court rejected a similar argument in Owens. In Owens, the court considered RCW 9A.82.050, which provides that "[a] person who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property, is guilty of trafficking in stolen property in the first degree." (Emphasis added.) The court held that the first seven alleged alternatives, "initiates, organizes, plans, finances, directs, manages, or supervises," represented multiple facets of a single means, while the eighth alternative, "traffics" was a true alternative because it described a separate category of conduct, namely the act of moving and selling the product as opposed to the act of stealing the product. Owens, 180 Wn.2d at 97-98.

The court further reasoned that the first seven verbs were so closely related that they could not be viewed as distinct acts:

> [I]t would be hard to imagine a single act of stealing whereby a person 'organizes' the theft but does not 'plan' it. Likewise, it would be difficult to imagine a situation whereby a person 'directs' the theft but does not 'manage' it. Any one act of stealing often involves more than one of these terms. Thus, these terms are merely different ways of committing one act, specifically stealing.

Owens, 180 Wn.2d at 99.

Relying on Owens, this court recently analyzed the identity theft statute at issue in this case and concluded that RCW 9.35.020 is not an alternative means statute. State v. Butler, 194 Wn. App. 525, 529, 374 P.3d 1232 (2016). Butler compared the four verbs used to describe identity theft to the seven verbs in Owens, holding:

-6-

> [t]he verbs here are not distinct means by which to commit identity theft, but rather are multiple facets of a single means. For instance, following the analysis in <u>Owens</u>, it would be hard to imagine the crime of identity theft being committed by a single act of "using" a check that did not also involve "obtaining" and "possessing" the check. Likewise, one could not "transfer" financial information without also "obtaining" and "possessing" that information.

<u>Butler</u>, 194 Wn. App. at 530. In contrast, a defendant can be guilty of "trafficking" stolen goods without having participated in stealing those goods.

The <u>Butler</u> court went on to reject the argument that these terms were different because not all of the terms interconnected, for instance, "one could 'obtain' financial information without 'using' or 'transferring' it." <u>Butler</u>, 194 Wn. App. at 530. The court pointed out that the same argument existed regarding the terms in <u>Owens</u>. <u>Butler</u>, 194 Wn. App. at 530. A person might "finance" or "initiate" a theft without then "managing" or "supervising" it. <u>Butler</u>, 194 Wn. App. at 530. The court reasoned that every verb need not correspond with every other verb in order to be considered a single means, holding that "[b]ecause no single action in the statute could be completed without simultaneously completing at least one other action, the various acts are too similar to constitute distinct alternative means." <u>Butler</u>, 194 Wn. App. at 530.

The distinction between the act of trafficking and committing the theft as found in <u>Owens</u>, is that the eventual trafficker could be uninvolved in the theft itself. Here, a defendant cannot "transfer" or "use" information that was never "obtained" or "possessed." Moreover, a person who "obtains" and "possesses" the legal or financial information of another generally does so with the objective of "using" or "transferring" that information. The fundamental nature does not vary significantly between these

terms, as they are merely different stages of committing the same act—

misappropriating the identity of another person. See Owens, 180 Wn.2d at 99.

Martin argues next that the legislature's intent that identify theft be an alternative

means crime is apparent from the legislature's statement of intent which provides, in

part:

> The legislature intends to penalize for each unlawful act of improperly
> obtaining, possessing, using, or transferring means of identification or
> financial information of an individual person. The unit of prosecution for
> identity theft by use of a means of identification or financial information is
> each individual unlawful use of any one person's means of identification or
> financial information. Unlawfully obtaining, possessing, or transferring
> each means of identification or financial information of any individual
> person, with the requisite intent, is a separate unit of prosecution for each
> victim and for each act of obtaining, possessing, or transferring of the
> individual person's means of identification or financial information.

RCW 9.35.001.

Martin maintains that by creating separate "units of prosecution" for each

unlawful act involving a person's identification of financial information, the legislature

intended that identify theft be an alternative means crime. While the legislature

amended the identity theft statute in 2008 to clarify that the statute created separate

"units of prosecution," Martin provides no authority for the proposition that having

separate units of prosecution equates to alternate means of committing that crime.[1]

We agree with Butler, and find that the statutory language in RCW 9.35.020 does

not dictate alternative means, but simply describes facets of the same type of conduct.

---

[1] The legislature amended the intent statement in RCW 9.35.001 in response to our Supreme Court's determination that double jeopardy provisions of the United States and Washington State Constitutions precluded "convicting a defendant more than once under the same criminal statute if only one 'unit' of the crime has been committed." State v. Leyda, 157 Wn.2d 335, 138 P.3d 610 (2006). Based on the amended language, a defendant can be charged for "each individual unlawful use" and for "each act of obtaining, possessing, or transferring" an individual person's means of identification or financial information. See RCW 9.35.001.

II

Martin argues alternatively that the State assumed the burden of proving that Martin knowingly obtained, possessed, and transferred a means of identification or financial information because all three terms were included in the "to-convict" instruction. Martin bases this assertion on the "law of the case doctrine." We disagree for two reasons.

First, even if the law of the case doctrine was consistent with current law, the doctrine would not be applicable in this case. The law of the case doctrine concerned the State's burden of proof when the to-convict instruction includes additional nonessential elements of the charged crime. State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998); State v. Tyler, 195 Wn. App. 385, 388-89, 382 P.3d 699 (2016). Under the law of the case doctrine, "[i]n criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the "to convict" instruction." Hickman, 135 Wn.2d at 102. Here, consistent with RCW 9.35.020(1), the to-convict instruction provided that the State must prove Martin "knowingly obtained, possessed, or transferred" a means of identification or financial information for each named victim. The to-convict instruction did not contain added or unnecessary elements.

Second, in Tyler, this court reviewed the law of the case doctrine in light of the U.S. Supreme Court's recent decision in Musacchio v. United States, 577 U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016), and concluded that Hickman and State v. Hayes, 135 Wn. App. 459, 262 P.3d 538 (2011), no longer correctly stated the law. Tyler, 195 Wn. App. at 396-400. As we explained, "Musacchio makes it clear that a reviewing

-9-

court is to disregard 'additional elements' and 'false alternative means' set out in a to-convict instruction and, instead, must evaluate the sufficiency of the evidence based on the essential elements of the charged crime as enacted by the legislature." Tyler, 195 Wn. App. at 400.

While Musacchio does not change Washington's evidentiary sufficiency analysis when the charged crime actually sets forth alternative means, it does mean that the law of the case doctrine does not require the State to prove additional or alternate elements for a crime based on the language of the to-convict instructions. Tyler, 195 Wn. App. at 400, n.9. When a jury reaches a verdict for a single means crime, even if the to-convict instruction includes definitional alternatives, the verdict is "necessarily unanimous as to the means by which it was committed." Tyler, 195 Wn. App. at 403.

III

Martin asserts finally that the seizure of the car was unlawful because it was not supported by probable cause. We disagree.

Martin does not challenge the search warrant obtained by police after seizing the vehicle, but instead challenges whether the police had probable cause to impound, or seize, the car prior to obtaining the search warrant.[2] We review the denial of a motion to suppress to determine whether substantial evidence supports the challenged findings of fact. State v. Winterstein, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009).

Police may lawfully impound a vehicle as evidence of a crime when the police have probable cause to believe the vehicle was stolen or was used in the commission of

---

[2] To the extent Martin challenges the validity of the search warrant that argument is waived as it was not raised at trial. Martin's CrR 3.6 motion to suppress challenged the "warrantless search and seizure of the occupants of the black 2000 Audi, and subsequent impoundment of the car."

a felony offense. State v. Tyler, 177 Wn.2d 690, 698, 302 P.3d 165 (2013). "[W]hen an officer has probable cause to believe that a car contains contraband or evidence of crime, he or she may seize and hold the car for the time reasonably needed to obtain a search warrant and conduct the subsequent search." State v. Huff, 64 Wn. App. 641, 653, 826 P.2d 698 (1992). A car may be seized by either placing a guard on the car at the scene or by towing it elsewhere. Huff, 64 Wn. App. at 653. Seizing the vehicle in order to obtain a warrant, rather than searching immediately, is "a course of action that the law prefers." Huff, 64 Wn. App. at 649.

Probable cause exists if facts and circumstances support a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched. State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). Probable cause determinations come from looking at the totality of the facts and circumstances known to the officer, including the defendant's prior convictions that are of the same general nature as the crime under investigation. See State v. Clark, 143 Wn.2d 731, 749, 24 P.3d 1006 (2001); Bokor v. Dep't of Licensing, 74 Wn. App. 523, 526, 874 P.2d 168 (1994). Probable cause requires "more than mere suspicion or personal belief that evidence of a crime will be found on the premises searched." Neth, 165 Wn.2d at 182. However, "probable cause is not negated merely because it is possible to imagine an innocent explanation for observed activities." State v. Fore, 56 Wn. App. 339, 344, 783 P.2d 626 (1989).

The evidence here supports that there was probable cause to seize the car Martin and Jackson were using. The witnesses specifically called the police to report seeing Martin and Jackson going through purses and wallets outside of the car the

police impounded. The officers saw several purses, wallets, and bags inside the car and trunk, as well as screwdrivers, knives, and flashlights. Based on the officers' experience and expertise, they recognized these items as being commonly used in car prowls and identity theft. Further, one of the officers recognized Jackson from a prior contact where Jackson had worked with Martin to commit identity theft. The evidence presented was substantial enough to support a reasonable inference that, upon searching the vehicle, the police would find evidence of vehicle prowling or identity theft.

We affirm.

Mann, J.

WE CONCUR: