

This opinion was
filed for record
at 8a.m. on Nov 7, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,                )
                                    )    No. 96397-5
            Respondent,             )
                                    )
    v.                              )
                                    )    En Banc
JOSE G. BARBOZA-CORTES,             )
                                    )
            Petitioner.             )    Filed    NOV 0 7 2019
_____)

MADSEN, J.—In this case the court is asked to determine if the second degree

unlawful possession of a firearm statute, RCW 9.41.040(2)(a), and the second degree

identity theft statute, RCW 9.35.020(1), are each alternative means statutes, and, if so,

whether, under the circumstances of this case, the trial court was required to give a

unanimity instruction addressing the alternative means. For the reasons discussed below,

we hold that neither statute is an alternative means statute. Accordingly, the absence of a

specific unanimity instruction regarding counts based on these statutes did not result in

error. We affirm the Court of Appeals in part and reverse in part.

FACTS

This case began with the theft of a backpack from a vehicle. The backpack contained cash and checks obtained for a school fundraiser. Several days after the vehicle prowl, defendant was video recorded at an ATM (automated teller machine) depositing four checks in his bank account, three of which had been in the stolen backpack. The fourth check listed "Dava Construction Company" in the top left corner. Ex. 4. Police obtained a warrant to search defendant's residence for the backpack. During the search, police found methamphetamine in defendant's basement apartment and a shotgun under the mattress in the bedroom. There was no testimony that the defendant owned the shotgun.

The State charged defendant with multiple counts, including one count of second degree unlawful possession of a firearm and one count of identity theft for the Dava check. At trial, State's witness Shelly Bedolla testified that Dava Construction is a company that she and her husband operate. She testified that the check in question was not one of her company checks, although the name and address reflected her business. Nor did she know the persons listed on the check.

Following a three-day trial, the jury found defendant guilty of nine crimes, including second degree unlawful possession of a firearm and second degree identity theft.

Defendant appealed. In the published portion of its split opinion, Division Three of the Court of Appeals affirmed defendant's conviction for second degree unlawful possession of a firearm, holding that the firearm statute is not an alternative means crime;

a different majority reversed defendant's conviction for second degree identity theft for the Dava check, holding that the identity theft statute *is* an alternative means crime and reversal is required because the evidence did not support both alternative means and the trial court's instructions did not require express unanimity. *State v. Barboza-Cortes*, 5 Wn. App. 2d 86, 88-89, 425 P.3d 856 (2018). Defendant petitioned for review of the noted affirmed conviction, and the State petitioned for review of the noted reversed conviction. This court granted both petitions. *State v. Barboza-Cortes*, 192 Wn.2d 1009 (2019).

## ANALYSIS

### Standard of Review

An alternative means crime is one where the legislature has provided that the State may prove the proscribed criminal conduct in a variety of ways. *State v. Armstrong*, 188 Wn.2d 333, 340, 394 P.3d 373 (2017) (citing *State v. Peterson*, 168 Wn.2d 763, 769, 230 P.3d 588 (2010)). Deciding which statutes create alternative means crimes is left to judicial interpretation. *State v. Sandholm*, 184 Wn.2d 726, 732, 364 P.3d 87 (2015) (citing *Peterson*, 168 Wn.2d at 769). Accordingly, as with other statutory interpretation questions, review is de novo. *State v. Mayorga DeSantiago*, 149 Wn.2d 402, 417, 68 P.3d 1065 (2003).

### The Requirements of Unanimity and Alternative Means

Under our state constitution, criminal defendants have the right to a unanimous jury verdict. *Sandholm*, 184 Wn.2d at 732 (citing WASH. CONST. art. I, § 21). In alternative means cases, where the criminal offense can be committed in more than one

3

way, "an expression of jury unanimity is not required provided each alternative means presented to the jury is supported by sufficient evidence." *Id.* However, if insufficient evidence supports one or more of the alternative means presented to the jury, the conviction will not be affirmed. *Id.* (citing *State v. Ortega-Martinez*, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994)).

As noted, deciding which statutes create alternative means crimes is left to the courts. *Id.* "This review begins by analyzing the language of the criminal statute at issue." *Id.* (citing *State v. Owens*, 180 Wn.2d 90, 96, 323 P.3d 1030 (2014)). Only if the court determines that the statute creates alternative means will it then analyze a unanimity challenge. *Id.*

In analyzing the statute at issue, the use of the disjunctive "or" in the language in question, the presence of statutory subsections, or the availability of definitional statutes do not necessarily create alternative means. *Id.* at 734. Rather, the salient inquiry is "whether each alleged alternative describes 'distinct acts that amount to the same crime.'" *Id.* (emphasis omitted) (quoting *Peterson*, 168 Wn.2d at 770). "The more varied the criminal conduct, the more likely the statute describes alternative means." *Id.* "But when the statute describes minor nuances inhering in the same act, the more likely the various 'alternatives' are merely facets of the same criminal conduct." *Id.*

By way of example, this court in *Sandholm* explained that the mere listing of eight actions in the trafficking in stolen property statute, RCW 9A.82.050, did not create eight alternative means but only two true alternatives.[1]

> The first seven alleged "alternatives" represented multiple facets of a single means, while the eighth alternative was a true alternative because it described a *separate category of conduct*. In other words, only two statutory means existed because only two distinct types of conduct were established in the trafficking statute: *participating* in the theft of stolen property and *transferring* stolen property.

*Id.* at 734-35 (some emphasis added) (citation omitted) (discussing *Owens*, 180 Wn.2d at 97-98).

Likewise, the *Sandholm* court explained that provisions in the sex offender registration statute, former RCW 9A.44.130 (2003), concerning failure to register with authorities after becoming homeless, after moving within the county, and after moving out of the county, did not present true alternatives. "Rather than describing distinct acts, . . . the alleged 'alternatives' each described the same single act: failure to register as a sex offender without alerting the appropriate authorities. Thus, the statute created a single means to commit the crime." *Sandholm*, 184 Wn.2d at 734 (discussing *Peterson*, 168 Wn.2d at 770).

The *Sandholm* court then turned to the DUI (driving under the influence) statute before it, former RCW 46.61.502 (2008), and considered the effect of its subsections

---

[1] The statute in question provided, "A person who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property, is guilty of trafficking in stolen property in the first degree." *Sandholm*, 184 Wn.2d at 734 n.3 (quoting RCW 9A.82.050(1)).

containing "affected by" clauses. *Sandholm*, 184 Wn.2d at 735, 733 (i.e., "'under the influence of or affected by intoxicating liquor or any drug; or . . . under the combined influence of or affected by intoxicating liquor and any drug'" (quoting former RCW 46.61.502(b)-(c)). Reiterating that "the distinctiveness of the conduct" is the salient inquiry, this court opined:

> Under this analysis, the DUI statute's "affected by" clauses do not describe multiple, *distinct types of conduct* that can reasonably be interpreted as creating alternative means. Rather, those portions of the DUI statute contemplate only one type of conduct: driving a vehicle under the "influence of" or while "affected by" certain substances that may impair the driver. Former RCW 46.61.502 (2008). These statutory subsections describe facets of the same conduct, not *distinct criminal acts*. Whether the defendant is driving under the influence of alcohol, or drugs, or marijuana, or some combination thereof, the defendant's conduct is the same— operating a vehicle while under the influence of certain substances. The fact that one substance or multiple substances may have caused that influence does not change the fundamental nature of the "influence of" or "affected by" criminal act. Former RCW 46.61.502 (2008).

*Id.* at 735 (emphasis added and omitted). With this analysis in mind, focusing on whether the alleged alternative means describe *distinct types of conduct*, we turn to the parties' contentions.

### Second Degree Unlawful Possession of a Firearm

Jose Barboza-Cortes contends that the trial court violated his right to a unanimous jury verdict for unlawful possession of a firearm because one of the alternative means, ownership, was not supported by sufficient evidence. As discussed above, our first inquiry is whether the unlawful possession of a firearm statute qualifies as an alternative means crime. We begin with the statute's language. RCW 9.41.040, declares, in relevant part:

(2)(a) A person . . . is guilty of the crime of unlawful possession of a firearm in the second degree, if the person . . . *owns*, has in his or her *possession*, or has in his or her *control* any firearm:
(i) [a]fter having previously been convicted . . . in this state or elsewhere of [specified felony crimes].

(Emphasis added.) Defendant urges us to adopt the analysis in Judge Fearing's dissent. Judge Fearing opined that the words "possess" and "control" are "similar in nature," such that if RCW 9.41.040(2)(a) contained only those alleged alternatives it would not qualify as an alternative means crime. *Barboza-Cortes*, 5 Wn. App. 2d at 112 (Fearing, J., dissenting in part). But the third alternative, "own," in the dissent's view, "is significantly different from possession or control." *Id.*

In the present context, we disagree. While there may be subtle distinctions in aspects of ownership, possession, and control that may be material in other contexts, in the present circumstance they all describe ways of accessing guns; and all of those interactions have been barred by the legislature as regards felons. Thus, in this context, the statute is more properly characterized as describing "nuances inhering in the same [prohibited] act"—accessing guns. *Sandholm*, 184 Wn.2d at 734. We conclude that the alleged alternatives are "facets of the same criminal conduct." *Id.* Accordingly, RCW 9.41.040(2) is not an alternative means crime.[2] We affirm the Court of Appeals on this issue.

---

[2] *Cf. State v. Holt*, 119 Wn. App. 712, 718, 82 P.3d 688 (2004) (stating without analysis that "Second degree unlawful possession of a firearm is an alternative means offense committed when a convicted felon (1) owns, (2) possesses, or (3) controls a firearm. RCW 9.41.040(1)(b)."). *Holt* is disapproved to the extent it is contrary to the resolution here.

Second Degree Identity Theft

The State contends that the second degree identity theft statute is not an alternative

means crime and urges this court to reverse Division Three's holding, which reached the

opposite conclusion. Again, we begin with the statute's language.

RCW 9.35.020(1) provides that "[n]o person may knowingly obtain, possess, use,

or transfer a *means of identification or financial information* of another person, living or

dead, with the intent to commit, or to aid or abet, any crime." (Emphasis added.) At

issue is whether the phrases "means of identification" and "financial information"

describe separate categories of conduct.[3] *See Sandholm*, 184 Wn.2d at 734-35. Those

terms are defined[4] as follows:

> (1) "Financial information" means any of the following information
> identifiable to the individual that concerns the amount and conditions of an
> individual's assets, liabilities, or credit:
> (a) Account numbers and balances;
> (b) Transactional information concerning an account; and
> (c) Codes, passwords, social security numbers, tax identification
> numbers, driver's license or permit numbers, state identicard numbers
> issued by the department of licensing, and other information held for the
> purpose of account access or transaction initiation.
>    . . . .
> (3) "Means of identification" means information or an item *that is
> not describing finances or credit* but is personal to or identifiable with an
> individual or other person, including: A current or former name of the
> person, telephone number, an electronic address, or identifier of the
> individual or a member of his or her family, including the ancestor of the

---

[3] In *State v. Butler*, 194 Wn. App. 525, 530, 374 P.3d 1232 (2016), Division Two of the Court of Appeals held that identity theft is not an alternative means crime. But the *Butler* court considered only "the four verbs" contained in the identity theft statute and did not consider the two provisions at issue here. *Id.*

[4] While definitional statutes do not create multiple alternative means for a crime, *see State v. Smith*, 159 Wn.2d 778, 785, 154 P.3d 873 (2007), the means at issue here are listed in the substantive offense itself. *See id.* at 789-90 ("we limit the reach of the alternative means doctrine to those alternative means directly provided for by the assault statutes" in question).

person; information relating to a change in name, address, telephone number, or electronic address or identifier of the individual or his or her family; a social security, driver's license, or tax identification number of the individual or a member of his or her family; and other information that could be used to identify the person, including unique biometric data.

RCW 9.35.005 (emphasis added).

We acknowledge that the "means of identification" definition expressly excludes information "describing finances or credit." RCW 9.35.005(3). Nevertheless, while the identity theft statute lists categories of information (and the definitional statute describes specific sets of such information) to which a violation of the statute applies, the statute describes and prohibits only a single type of conduct: the taking of another's private information to commit or aid and abet commission of a crime. It is unclear what distinction the legislature intended when it divided "means of identification" and "financial information," but what is clear is the overlap in a number of the items identified in each of these definitions. For example, driver's license, Social Security, and tax identification numbers are expressly listed in both definitions. Additionally, there is implicit overlap in other items. "[I]nformation held for the purpose of account access or transaction initiation" often includes a mother's maiden name, which also relates to the "ancestor of the person." RCW 9.35.005(1)(c), (3). Thus, it is difficult to see these definitions as describing distinct or different conduct. It is also clear that the distinction between financial identifying information is not significant to the conduct the legislature is trying to prevent, which is the use of another's identification to commit any crime. In other words, punishment for using a person's personal information does not depend on whether the crime committed is a financial crime or any other crime. We conclude that

9

the identity theft statute may be properly characterized as describing "nuances inhering in the same [prohibited] act"—taking another's private information. *Sandholm*, 184 Wn.2d at 734. Thus, the alleged alternatives here are more aptly characterized as "facets of the same criminal conduct." *Id.* Accordingly, we hold that RCW 9.35.020(1) is not an alternative means crime. We reverse the Court of Appeals on this issue.[5]

## CONCLUSION

We hold that the second degree unlawful possession of a firearm statute, RCW 9.41.040(2)(a), is not an alternative means statute and affirm the Court of Appeals on this issue. We hold that the second degree identity theft statute, RCW 9.35.020(1), also is not an alternative means statute and reverse the Court of Appeals on this issue. Because neither of the noted statutes is an alternative means crime, no unanimity instruction addressing alternative means was required and the absence of such instruction was not error. Accordingly, we affirm the Court of Appeals in part and reverse in part.

---

[5] Given our disposition, we do not reach the State's contention that it effectively elected one alternative means in closing argument.

_Madsen, J._

WE CONCUR:

_Fairhurst C.J._

_Johnson J._

_Stephens J._

_Wiggins J._

_Gordon McCloud J._

_Yu, J._

No. 96397-5

GONZÁLEZ, J. (concurring)—Reasonable minds may disagree about whether

the identity theft and unlawful possession of a firearm statutes are alternative

means crimes. *See State v. Barboza-Cortes*, 5 Wn. App. 2d 86, 95, 425 P.3d 856

(2018); *id.* at 116 (Fearing, J., dissenting in part). I agree with the majority that

neither is an alternative means crime. I write separately, however, because this has

convinced me we should modify our approach to alternative means crimes.

Our current system is unworkable and results in the vacation of fair

convictions after fair trials. Instead, we should adopt the federal approach from

*Griffin v. United States*, 502 U.S. 46, 56, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991).

Under *Griffin*, on appellate review, a general jury verdict on an alternative means

crime will not be vacated so long as sufficient evidence supports at least one of the

means.[1] *See id.* In *State v. Owens*, 180 Wn.2d 90, 95 n.2, 323 P.3d 1030 (2014),

and *State v. Ortega-Martinez*, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994), we

declined to follow the approach from *Griffin*. As a result, we have created an

arbitrary, unnecessary, and unpredictable standard that turns on increasingly subtle

---

[1] Defendants, of course, should be free to request jury instructions that require jury unanimity and judges should grant such requests if necessary to protect the defendant's right to jury unanimity. *See* WASH. CONST. art. I, § 21.

1

shades of statutory meaning. I recognize I signed some of the precedents that I would now reject.

With these observations, I concur.

González (J.

Owens, J.