IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34356-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED IN PART |
| | ) | |
| JOSE G. BARBOZA-CORTES | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, A.C.J. — An alternative means crime is an offense that can be committed and proved in more than one way. When a defendant is charged with an alternative means crime, our constitution requires that the jury make an express, unanimous finding as to which alternative means forms the basis of a conviction, unless the State presents sufficient evidence in support of each alternative means.

Jose Barboza-Cortes claims that the rule governing alternative means crimes was violated in his case and that, as a result, his convictions for second degree unlawful possession of a firearm and second degree identity theft must be reversed. Mr. Barboza-Cortes's contentions result in a split outcome by a split panel.

A majority of the panel disagrees with Mr. Barboza-Cortes's argument with respect to second degree unlawful possession of a firearm. Although the firearm statute prohibits owning, possessing or controlling a firearm, these three descriptors are not alternate ways of violating the same statute. They are instead (as indicated by the name of the crime) manners of proving the singular criminal act of unlawful possession.

When it comes to the identity theft conviction, a separate majority of the panel agrees with Mr. Barboza-Cortes's analysis. Washington's identity theft statute prohibits illegal activity involving either a "means of identification" or "financial information." These two concepts do not overlap and, therefore, constitute alternative means. Because one of Mr. Barboza-Cortes's identity theft convictions was not supported by evidence of both a means of identification and financial information, and because the court's instructions did not require express jury unanimity, that conviction must be reversed.

## BACKGROUND

On January 16, 2015, Juliana Garcia's backpack went missing from her car while it was parked overnight at her residence. The backpack contained money Ms. Garcia had collected for a school fundraiser, including several checks. Ms. Garcia reported the stolen backpack to police.

Eleven days later, Mr. Barboza-Cortes used an automatic teller machine (ATM) to deposit four checks into his bank account. Video from the ATM showed Mr. Barboza-Cortes making the deposit. Three of the deposited checks were ones that had been taken from Ms. Garcia's backpack. The stolen checks were not endorsed, but two of the checks had altered payee information. The fourth deposited check identified Dava Construction as the payor and Francisco Villa as the payee. Although Dava Construction is a real company, the financial information listed on the Dava Construction check was fictitious.

After locating Mr. Barboza-Cortes's banking information and home address, law enforcement obtained a search warrant for Mr. Barboza-Cortes's residence. The warrant was dated February 5, 2015, and executed that same day.

Mr. Barboza-Cortes was the sole occupant of his residence and was present at the time of the search. During the course of the search, officers twice obtained amended warrants after first finding methamphetamine and then a firearm. The firearm was a Stevens model pump-action shotgun. It was hidden between two bedroom mattresses. The gun was not fingerprinted and, other than a test fire, no further information was obtained about the weapon.

Mr. Barboza-Cortes was charged with various crimes as a result of the theft investigation and search warrant execution. A jury ultimately convicted Mr. Barboza-

3

Cortes of possession of methamphetamine, unlawful possession of a firearm, three counts

of third degree possession of stolen property, and four counts of identity theft. The stolen

property counts pertained to the three stolen checks that had been deposited by Mr.

Barboza-Cortes on January 27, 2015. The four identity theft counts pertained to each of

the four checks deposited on January 27, including the three checks stolen from Ms.

Garcia's backpack and the fictitious Dava Construction check.

At sentencing, the court imposed 43 months' imprisonment, 12 months'

community custody, and several legal financial obligations.

Mr. Barboza-Cortes appeals.

ANALYSIS

*Alternative means crimes and lack of jury unanimity*

Mr. Barboza-Cortes contends his firearm conviction and one of the four identity

theft convictions were imposed in violation of his constitutional right to a unanimous jury

verdict. WASH. CONST. art I, § 21. His argument rests on the claim that unlawful

possession of a firearm and identity theft are both alternative means crimes, and that the

trial court's instructions left open the possibility of an improper, nonunanimous jury

verdict. Mr. Barboza-Cortes's constitutional claims are ones that may be raised for the

first time on appeal. RAP 2.5(a).

An alternative means crime is one that presents multiple ways of committing and proving the same offense. *State v. Owens*, 180 Wn.2d 90, 96, 323 P.3d 1030 (2014). When a criminal statute creates an alternative means crime, a defendant is entitled to an express unanimous jury determination as to which means forms the basis of the guilty verdict unless the State presents sufficient evidence to support each of the alternative means. *Id.* at 95.

Whether a given statute creates an alternative means crime is a question of statutory interpretation. *State v. Bunker*, 169 Wn.2d 571, 577-78, 283 P.3d 487 (2010). When engaging in statutory interpretation, our "fundamental objective is to ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). The primary source of legislative intent is the language used by the legislature. If the wording and context used by the legislature render a statute plain on its face, then we "must give effect to that plain meaning as an expression of legislative intent." *Id.*

Having reviewed the statutory language applicable to Mr. Barboza-Cortes's arguments, a majority of our court partially agrees with Mr. Barboza-Cortes's contentions. We disagree with his arguments with respect to second degree unlawful possession of a firearm. However, we agree that one of Mr. Barboza-Cortes's

5

convictions for second degree identity theft must be reversed under an alternative means analysis.

*Unlawful possession of a firearm*

Under RCW 9.41.040(2)(a), a person "is guilty of the crime of unlawful possession of a firearm in the second degree, if . . . the person owns, has in his or her possession, or has in his or her control any firearm" after suffering one of several forms of disenfranchisement outlined by statute. The trial court instructed the jury pursuant to the foregoing terms of the statute and the jury convicted.

On appeal, Mr. Barboza-Cortes claims RCW 9.41.040(2)(a) encompasses three distinctive means of committing the same crime. He focuses on the use of the word "or" and argues the legislature contemplated that an individual can be convicted under the statute by one of the distinct acts of owning, possessing, or controlling a firearm. Because Mr. Barboza-Cortes was the sole occupant of the residence where the firearm was found, the State plainly presented sufficient evidence of possession and control. *State v. Chakos*, 74 Wn.2d 154, 157-58, 443 P.2d 815 (1968). However, Mr. Barboza-Cortes argues the record lacked any evidence of ownership. Because the jury was not provided a unanimity instruction, Mr. Barboza-Cortes claims some of the jurors might

have voted to convict him for a charge that lacked sufficient facts. Accordingly, Mr.

Barboza-Cortes contends his conviction must be reversed.

We disagree with Mr. Barboza-Cortes's analysis. The word "or" is not, by itself, a

strong indicator of an alternative means crime. *State v. Peterson*, 168 Wn.2d 763, 770,

230 P.3d 588 (2010). Instead, we look at the other statutory language, as well as context.

Here, the legislature preceded the three-verb phrase noted by Mr. Barboza-Cortes with

the statement that it was designating "the crime of unlawful possession of a firearm in the

second degree." RCW 9.41.040(2)(a). Then the legislature listed three methods in

which unlawful possession can occur: ownership, possession, or control. Ownership and

control are part of the dictionary definition of possession.[1] In addition, the concept of

control is a method of proving constructive possession. *State v. Callahan*, 77 Wn.2d 27,

29, 459 P.2d 400 (1969). And ownership of an item can be evidence of constructive

---

[1] "Possession" is defined as "[1 a] **:** the act or condition of having in or taking into one's **control** . . . [b :] actual physical **control** or occupancy of property . . . without regard to . . . ownership . . . [d :] **control** of the playing piece (as a ball or puck) . . . <the home team took [possession] on its own one yard line> [2 :] something **owned**, occupied, or controlled **:** a thing possessed . . . [3 :] the condition or fact of being possessed by something . . . [a :] the condition of being dominated by something (as an extraneous personality, demon, passion, idea, or purpose) . . . [b :] a psychological state in which an individual's normal personality is replaced by another [c :] the fact or condition of being self-controlled." *Webster's Third New International Dictionary* 1770 (1993) (emphasis added).

7

possession. *Id.* at 31. The fact that the concepts of ownership and control are inherent in the very act of possession indicates the legislature did not intend to create separate crimes. *State v. Sandholm*, 184 Wn.2d 726, 734-35, 364 P.3d 87 (2015).

Our review of RCW 9.41.040(2)(a) indicates the legislature plainly intended to prohibit one type of activity, unlawful possession of a firearm. Ownership and control are terms that merely serve to "elaborate upon and clarify" manners in which possession can occur. *State v. Smith*, 159 Wn.2d 778, 785-86, 154 P.3d 873 (2007). They constitute "'means within a means.'" *Id.* at 787. They do not create alternative means. To the extent *State v. Holt*, 119 Wn. App. 712, 82 P.3d 688 (2004) indicates otherwise,[2] we respectfully disagree with that decision.

*Second degree identity theft*

RCW 9.35.020(1) creates the crime of second degree identity theft. The statute declares:

> No person may knowingly obtain, possess, use, or transfer a *means of identification or financial information* of another person, living or dead, with the intent to commit, or to aid or abet, any crime.

(Emphasis added.) The trial court's identity theft instructions were consistent with this

---

[2] While the *Holt* court characterized RCW 9.41.040 as an alternative means crime, 119 Wn. App. at 718, the decision did not provide any analysis of his claim and ultimately denied Mr. Holt relief.

language.

Mr. Barboza-Cortes contends the use of the disjunctive nouns "means of identification or financial information" within the identity theft statute establishes two alternative means of committing the crime. In addition, Mr. Barboza-Cortes claims that because the State was unable to prove that he obtained, possessed, used, or transferred any "financial information" of Dava Construction (as opposed to Dava Construction's "means of identification") his conviction pertaining to the Dava Construction check must be overturned. Mr. Barboza-Cortes does not challenge the fact that his other identity theft convictions were based on checks that bore both a means of identification and financial information. As a consequence, those convictions are not vulnerable to a unanimity challenge.

We previously addressed whether identity theft was an alternative means crime in *State v. Butler*, 194 Wn. App. 525, 374 P.3d 1232 (2016). In *Butler*, Division Two of our court held that identity theft is not an alternative means crime. However, *Butler* did not address the argument raised by Mr. Barboza-Cortes. *Butler* addressed only the four disjunctive verbs set forth in RCW 9.35.020, "obtain, possess, use, or transfer." The *Butler* court held that these four verbs did not create alternative means of committing

9

identity theft. 194 Wn. App. at 529-30. Mr. Barboza-Cortes's argument regarding the

alternative nouns set forth in the statute is an issue never considered in *Butler*.

Our analysis of whether the identity theft statute constitutes an alternative means

crime, as argued by Mr. Barboza-Cortes, turns on the meaning of the terms "means of

identification" and "financial information." The legislature has defined the two terms as

follows:

> "Financial information" means any of the following information
> identifiable to the individual that concerns the amount and conditions of an
> individual's assets, liabilities, or credit:
>     (a) Account numbers and balances;
>     (b) Transactional information concerning an account; and
>     (c) Codes, passwords, social security numbers, tax identification
> numbers, driver's license or permit numbers, state identicard numbers issued
> by the department of licensing, and other information held for the purpose
> of account access or transaction initiation.
>         . . . .
> "Means of identification" means information or an item that is not
> describing finances or credit but is personal to or identifiable with an
> individual or other person, including: A current or former name of the
> person, telephone number, an electronic address, or identifier of the
> individual or a member of his or her family, including the ancestor of the
> person; information relating to a change in name, address, telephone
> number, or electronic address or identifier of the individual or his or her
> family; a social security, driver's license, or tax identification number of the
> individual or a member of his or her family; and other information that
> could be used to identify the person, including unique biometric data.

RCW 9.35.005(1), (3).

A close read of the statute reveals the definitions of "means of identification" and "financial information" do not overlap. By excluding information or items "describing finances or credit" from the definition of a "means of identification," the legislature indicated its intent to outline two separate manners of committing identity theft. *Cf. Butler*, 194 Wn. App. at 528 (statute divided into subparts more likely to designate an alternative means); *State v. Lindsey*, 177 Wn. App. 233, 241, 311 P.3d 61 (2013) (same). While the definitions of "means of identification" and "financial information" both list social security numbers, tax identification numbers, and driver's license numbers as qualifying types of information, this is not an indication of overlap. Social security numbers, tax identification numbers, and driver's license numbers can be used by financial institutions to identify specific accounts. In such circumstances, the numbers are used for "account access or transaction initiation" and therefore qualify as financial information. RCW 9.35.005(1). But outside the financial context, the definitional statute makes clear that the numbers constitute means of identification.

We recognize that definitional statutes do not create alternative means crimes. *Smith*, 159 Wn.2d at 785; *State v. Linehan*, 147 Wn.2d 638, 646, 56 P.3d 542 (2002). But here, the alternative means for identity theft are not hidden away in a definitional statute. Instead, the two means are listed as part of the substantive offense. The

11

definitional statute merely serves to articulate the distinct nature of the two terms listed in the substantive crime.

Based on the wording of substantive text chosen by the legislature, one commits the crime of identity theft either by obtaining/possessing/using/transferring financial information or by obtaining/possessing/using/transferring a means of identification. It is possible, if not common, for one to commit both acts at the same time, such as what occurs when a defendant fraudulently passes a check bearing another person's name (means of identification) and account number (financial information). But the two acts do not inhere in each other. By using a document bearing another's name or address, one is not presenting financial information. And by presenting a document bearing an account number, one is not presenting another person's means of identification. Because the identity theft statute contemplates two very distinct types of actions, it qualifies as an alternative means crime. *Cf. Owens*, 180 Wn.2d at 99 (statute does not create alternative means when many of the alternate methods listed by statute are not severable).

Having concluded that identity theft is an alternative means crime and that the jury was not provided a unanimity instruction, we must examine whether the State presented sufficient evidence of each alternative means. With respect to the Dava Construction check, the State's evidence was that the check deposited by Mr. Barboza-Cortes

12

contained an existing company name and address. However, the check did not bear any accurate financial information. Given these circumstances, the State only submitted sufficient evidence as to one of the two alternative means of the crime charged. Although the State satisfied its burden of producing evidence that the Dava Construction check constituted a means of identification, there was no evidence that the check qualified as financial information.

The State recognizes it failed to present evidence that the Dava Construction offense involved any financial information. Nevertheless, the State claims the absolute lack of evidence means the jury must have based its verdict on the alternative means of obtaining, possessing, or using the construction company's means of identification. This argument is inconsistent with standards set by the Supreme Court regarding alternative means crimes. "When one alternative means of committing a crime has evidentiary support and another does not, courts may not assume the jury relied unanimously on the supported means." *State v. Woodlyn*, 188 Wn.2d 157, 162, 392 P.3d 1062 (2017). The complete lack of evidence as to one of the alternative means is what requires reversal. *Id.* at 165-66. It does not allow us to "'rule out'" the possibility that a juror may have convicted the defendant on an unsupported alternative means. *Id.*

13

Given that a conviction for identity theft can be obtained in two distinct ways and that the State failed to present evidence with respect to one of the two ways, the lack of an express unanimity instruction means Mr. Barboza-Cortes is entitled to reversal of this conviction without prejudice.[3]

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

*Remaining claims*

*Search warrant*

Mr. Barboza-Cortes challenges the search of his residence, arguing that the affidavit in support of the search warrant failed to establish a nexus between any seizable items and his home. *State v. Thein*, 138 Wn.2d 133, 147, 977 P.2d 582 (1999). We review this legal argument de novo, *State v. Chamberlin*, 161 Wn.2d 30, 40, 162 P.3d 389 (2007), and hold that the affidavit provided adequate nonconclusory facts indicating that evidence of alleged crimes would be found at Mr. Barboza-Cortes's home.

---

[3] The applicable conviction was contained in count 12 of the fifth amended information. Clerk's Papers at 203.

14

Probable cause to believe a person committed a crime does not necessarily support probable cause to search that person's home. *Thein*, 138 Wn.2d at 148; *State v. Dunn*, 186 Wn. App. 889, 897, 348 P.3d 791 (2015). Conclusory generalizations about criminal activity are inadequate to establish probable cause. *Thein*, 138 Wn.2d at 147-48. However, a court may infer that law enforcement will find stolen property at a perpetrator's residence if the perpetrator had an opportunity to return home before his apprehension by the police. *Dunn*, 186 Wn. App. at 897.

Here, the timing of the warrant and the nature of the items sought supported probable cause for issuance of the warrant. By the time the police sought the warrant, 20 days had passed since the original theft and over a week had passed since Mr. Barboza-Cortes had deposited stolen checks into his bank account. Mr. Barboza-Cortes thus had sufficient time to secrete evidence related to stolen property at his residence. Yet not too much time had passed to raise staleness concerns. In addition, the nature of the items sought (a stolen backpack, indicia of residence, a pair of shoes)[4] are the types of items likely stored at a home. Based on the allegations set forth in the warrant affidavit, there was a sufficient basis to believe that evidence outlined in the affidavit would be found at

---

[4] Fresh shoeprints were found in the snow near Ms. Garcia's car after the backpack was stolen from it.

15

Mr. Barboza-Cortes's home.

   *Sufficiency of evidence*

   Mr. Barboza-Cortes contends the State's evidence was insufficient to convict him of unlawful firearm possession, identity theft, and possession of stolen property. His challenge goes to the State's proof of mens rea. With respect to the firearm charge, Mr. Barboza-Cortes claims there was insufficient evidence to show knowing possession of the shotgun, which was hidden between two mattresses. As for the other charges, Mr. Barboza-Cortes claims the State lacked evidence to show he knew the checks deposited to his bank account had been stolen. Viewing the evidence in the light most favorable to the State, *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980), we find the evidence sufficient as to all charges.

   As explained above, the fact that Mr. Barboza-Cortes was the sole occupant of the residence where the shotgun was found provided the State with sufficient evidence of knowledge to support the firearm conviction. *Chakos*, 74 Wn.2d at 157-58. With respect to the remaining charges, the ATM video surveillance shows Mr. Barboza-Cortes possessed and deposited checks that were not made out to him and contained financial information that was not his. This was sufficient to satisfy the mens rea requirements of his stolen property and identity theft convictions. RCW 9.35.020(1); RCW 9A.56.170.

*Double jeopardy*

Mr. Barboza-Cortes argues that his three convictions for possession of stolen property (stemming from the three checks stolen from the backpack) encompass the same offense for double jeopardy purposes. Relying on *State v. McReynolds*, 117 Wn. App. 309, 340, 71 P.3d 663 (2003), he contends that simultaneous possession of various items of property stolen from multiple owners constitutes one unit of prosecution of the crime of possession of stolen property.

While the State does not fully agree with Mr. Barboza-Cortes's factual analysis, it nevertheless concedes error and agrees that Mr. Barboza-Cortes should only be convicted of one count of possession of stolen property. The remaining counts should be dismissed. We accept the State's concession and direct that two of Mr. Barboza-Cortes's three convictions for possession of stolen property be reversed and dismissed.

*Sentencing*

Mr. Barboza-Cortes claims the trial court committed several errors at sentencing, including a miscalculation of his offender score based on washed out offenses; imposition of a noncrime-related community custody condition, prohibiting Mr. Barboza-Cortes from frequenting places whose principal source of income is the sale of alcoholic

17

beverages;[5] imposition of a $250 drug enforcement fee that was included on the judgment and sentence, but not mentioned at sentencing; and imposition of a $250 jury demand fee, despite Mr. Barboza-Cortes's inability to pay.[6] Because we are reversing a portion of Mr. Barboza-Cortes's convictions, his sentence must be reversed. Mr. Barboza-Cortes may raise the aforementioned claims of error at resentencing.

## CONCLUSION

Mr. Barboza-Cortes's conviction for one count of second degree identity theft (count 12) is reversed without prejudice. Two of Mr. Barboza-Cortes's convictions for possession of stolen property are dismissed with prejudice, pursuant to Mr. Barboza-Cortes's double jeopardy argument. Mr. Barboza-Cortes's sentence is reversed and this matter is remanded for further proceedings consistent with the terms of this opinion. Because Mr. Barboza-Cortes has partially prevailed on appeal, the State shall not be awarded appellate costs.

_____
Pennell, A.C.J.

---

[5] We have previously stricken similar conditions imposed in drug cases as not crime related. *State v. Davis*, No. 34766-4-III (Wash. Ct. App. Sept. 28, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/347644.pdf.

[6] As of June 7, 2018, a jury demand fee is a discretionary cost that may not be imposed against a defendant who is found to be indigent at the time of sentencing. RCW 10.46.190. LAWS OF 2018, ch. 269, § 9.

18

No. 34356-1-III

KORSMO, J. — (concurring and dissenting) – I join all of the excellent lead opinion except its discussion of whether identity theft is an alternative means offense. We have already answered that question in *State v. Butler*, 194 Wn. App. 525, 374 P.3d 1232 (2016). Moreover, even if it were an alternative means offense, we should still be affirming the conviction on count 12 because the prosecutor elected the means he was asking the jury to consider. The election doctrine should be just as availing in alternative means cases as it is in multiple acts prosecutions. For both of those reasons, I dissent in part from the reversal of that charge.

*Identity Theft Is Not an Alternative Means Offense*

In order to ensure the state constitutional right to a jury trial under Art. I, § 21 is satisfied, Washington requires that a jury verdict in a criminal case be unanimous. *State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014). That right extends to unanimity of means if the charge includes alternative means of committing the offense. *Id*. An alternative means offense is one "by which the criminal conduct may be proved in a variety of ways." *Id*. at 96. That right to unanimity is satisfied if there is sufficient evidence to support each means of the offense or if there is an express verdict on a specific means. *Id*. at 95. If the evidence is insufficient on one of the means of

committing the offense, a general verdict must be reversed and the case remanded for a new trial. *State v. Woodlyn*, 188 Wn.2d 157, 165, 392 P.3d 1062 (2017); *State v. Ortega-Martinez*, 124 Wn.2d 702, 708, 881 P.2d 231 (1994).

Determining whether a crime consists of alternate means is an issue that has revived in recent years, fueled perhaps, by the adoption of new and more complex criminal statutes. At its heart, the basic inquiry is one of legislative intent. *State v. Arndt*, 87 Wn.2d 374, 377-378, 553 P.2d 1328 (1976). In the absence of express legislative intent, courts consider four factors: (1) the title of the act, (2) whether there is a connection between the various acts set out, (3) whether the acts are consistent with and not repugnant to each other, and (4) whether the acts inhere in the same transaction. *Id.* at 378-384. Various principles of statutory construction also provide aid. *Owens*, 180 Wn.2d at 96; *Arndt*, 87 Wn.2d at 384-385.

> *Owens* involved the first degree trafficking in stolen property statute:
>
> A person who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, *or who knowingly traffics in stolen property*, is guilty of trafficking in stolen property in the first degree.

RCW 9A.82.050(1) (emphasis added). The court concluded that the first seven verbs addressed related behaviors constituting one form of trafficking, while the italicized clause constituted a second means of committing the crime. *Owens*, 180 Wn.2d at 98-99. In reaching that decision, the court emphasized the similarities of the first seven verbs

2

and noted that all were just forms of stealing property. *Id*. at 99. In that regard, it noted that when considering the failure to register statute, the court had determined that the three asserted alternative means (failing to register after becoming homeless, changing residences within county, moving between counties) were too similar to constitute distinct means. *Id*. at 97, 99 (discussing *State v. Peterson*, 168 Wn.2d 763, 230 P.3d 588 (2010)). Instead, they were all simply forms of failing to register. *Owens*, 180 Wn.2d at 99.

> Identity theft is defined in RCW 9.35.020(1):
>
> No person may knowingly *obtain, possess, use, or transfer* a <u>means of identification or financial information</u> of another person, living or dead, with the intent to commit, or to aid or abet, any crime.

(Emphasis added.) This statute was authoritatively construed in this context in *Butler*. There the appellant argued that the four verbs (italicized above) created four alternative methods of committing identity theft. 194 Wn. App. at 529. Applying the *Owens* analysis of the four verbs, *Butler* noted that each described similar actions. *Id*. at 529-530. They were not "distinct means" of committing identity theft, but were "multiple facets of a single means." *Id*. at 530. The words did not require a complete overlap in meaning to constitute the same conduct. *Id*. "Because no single action in the statute could be completed without simultaneously completing at least one other action, the various acts are too similar to constitute distinct alternative means." *Id*. Accordingly, the court held that "identity theft is not an alternative means crime." *Id*.

No. 34356-1-III
*State v. Barboza-Cortes*

Appreciating that *Butler* otherwise dooms his position, Mr. Barboza-Cortes argues, and the majority agrees, that identity theft constitutes an alternative means offense because the *objects* of the four verbs—financial information or personal identification[1]—are different. Although this is an interesting question, I think the *Owens* approach compels the same answer that *Butler* gave.

The focus of *Owens* was on the practical meaning of the verbs before it and the acknowledgement that the behaviors listed "overlapped" (in the language of the majority) in the practical sense that it was difficult, if not impossible, to commit the act in one manner without violating other statutory prohibitions. Understandably, *Butler* reached the same result when construing the verbs at issue in this statute. While the majority distinguishes this case by focusing, as Mr. Barboza-Cortes argues, on the two objects of the verbs (financial information and personal identification) being discrete, I think that is the wrong focus. The criminal law prohibits *actions* that are contrary to the good of society. The statute's verbs are its action words, just as they are for any sentence constructed using English or any other romance language. Those are the words that define the actions that the legislature seeks to prohibit. They are the proper focus of an alternative means analysis.

---

[1] *See* the underlined emphasis in the statute above.

4

The same result occurred in *Peterson*. At issue there was only a single verb phrase (failure to register), and at least three different ways of failing to register. Nonetheless, the court found that those three ways of violating the registration requirement were all the same conduct because there was only a single prohibited action—failing to register. 168 Wn.2d at 770. The focus was on the verb rather than on the objects of the verb.[2] I think the same thing should happen here. The essence of this offense is wrongly exploiting the personal information of another, whether it be financial information or personal identity information, by one of the methods listed in the statute. Although both financial and personal identity information are protected, the statute does not make mere knowledge of another person's information a crime. It is the *misuse* of that information that is actionable. Together, the personal identification and financial information language broadly protects an individual's most sensitive and valuable information. The protection of that sensitive information is the true object of the statute. In many instances, the financial information and identity information will overlap—the checks at issue in the other counts of identity theft in this case contained both types of information. There frequently will be an overlap in proof.

---

[2] Appellant has not identified a single statute where a court has engaged in an alternative means analysis of anything other than a verb. This case appears to be unique in that regard.

As a practical matter, the unanimity problem is seldom genuinely at issue in circumstances like this. The behavior at issue in count 12 involved a single check allegedly passed by the defendant. The question for the jury was whether or not he passed the check, not whether the check involved personal identity information as opposed to financial information. The nature of personal information is unlikely to be at issue in a trial.

By focusing on the objects instead of the verbs, I believe the majority has reversed the alternative means analysis. As *Butler* recognized, identity theft is not an alternative means statute.

This conclusion also is consistent with the unit of prosecution for identity theft. Construing the various methods of committing identity theft, our court declared that the unit of prosecution for identity theft is each identification or information of a victim that is used, transferred, obtained or possessed, not each action taken against the victim. *State v. Leyda*, 157 Wn.2d 335, 345, 138 P.3d 610 (2006). Once the action is taken against the victim, repeated uses (or transfers, etc.) are part of the same continuing course of conduct. *Id*. at 342-350. This unit of prosecution strongly confirms my view that it is the verbs that are at issue when construing criminal behavior, not the objects of those actions.

For the noted reasons, I respectfully disagree with the majority's construction of the identity theft statute.

No. 34356-1-III
*State v. Barboza-Cortes*

*Jury Unanimity Was Assured by the Prosecutor's Election*

Moreover, if this was in fact an alternative means case, then an additional problem presents itself. Here, the prosecutor elected the means by which the jury should reach its verdict. He expressly told the jury that this was an identification case and that there was no evidence of financial records since that information was known to be false. In the like circumstances involving multiple acts cases, the prosecutor's election of the evidence on which he is relying serves to guarantee jury unanimity. I do not see the alternative means cases as being any different. If election of acts suffices to ensure unanimity, election of means should do the same.

In "multiple acts" cases where more different criminal actions were proven than were alleged, the constitution requires that the jury either be instructed on the need to agree on the specific act proved or the State must elect the specific act it is relying on in order to ensure that a unanimous verdict was returned. This type of error requires a new trial unless shown to be harmless beyond a reasonable doubt. *State v. Camarillo*, 115 Wn.2d 60, 64, 794 P.2d 850 (1990); *State v. Kitchen*, 110 Wn.2d 403, 405-406, 414, 756 P.2d 105 (1988).[3]

_____

[3] Similarly, when a jury considers an alternative means that was not supported by the evidence, the remedy is to reverse the conviction and remand for a new trial on the alternative means that was supported by the record. *State v. Green*, 94 Wn.2d 216, 235, 616 P.2d 628 (1980).

Here, there was no error because the prosecutor expressly told the jury his theory during closing argument. He expressly eschewed reliance on the financial information prong of the statute because the information on the fraudulent check clearly was false.

The majority dismisses this argument on the basis that it is inconsistent with *Woodlyn*. It is not. In *Woodlyn*, as in numerous other failed alternative means prosecutions such as *Green*, the question of election was not presented. Instead, the problem was whether sufficient evidence supported all of the means presented to the jury. Whether any of those means was successfully withdrawn from jury consideration by the prosecutor's election of means was never at issue.

The issue was raised in *State v. Lobe*, 140 Wn. App. 897, 167 P.3d 627 (2007). At issue there were multiple counts of witness tampering; the State conceded on two counts that insufficient evidence was presented about one of the alternative means of committing the crime, but argued that the prosecutor had elected for the jury a means of committing the crime that were supported by sufficient evidence. *Id*. at 902. The majority opinion determined that the election of means was inadequate in each instance. *Id*. at 906. In contrast, the dissenting judge found the elections sufficient. *Id*. at 907 *et seq*. (Hunt, J., dissenting).

Similarly, the Washington Supreme Court has at least twice recognized that an alternative means problem does not arise if the jury was not presented with alternative means for consideration. *Peterson*, 168 Wn.2d at 771 n.6; *State v. Smith*, 159 Wn.2d

8

778, 790, 154 P.3d 873 (2007). The prosecutor's selection of the means he was relying on here effectively withdrew the other alternative from the jury's consideration, just as an election does in the context of a multiple acts case.

If the prosecutor's selection of which act he was relying on is sufficient to preserve unanimity in a multiple acts case such as *Kitchen*, it is equally effective in an alternative means case. Here, the prosecutor told the jury that only one means was at issue in count 12. That election sufficed.

For both reasons, I respectfully dissent from the majority's reversal of count 12. I concur in all other aspects of the lead opinion.

Korsmo, J.

No. 34356-1-III

FEARING, J. (concur in part/dissent in part) — I concur in part and dissent in part with the majority. I agree with my two colleagues to uphold the search of Jose Barboza-Cortes' premises and to affirm Barboza-Cortes' conviction for unlawful possession of methamphetamine with intent to deliver and three convictions of possession of stolen property. I am part of the majority that holds that second degree identity theft constitutes a partial alternative means crime with regards to the object of the theft. With the writer of the lead opinion, I reverse Jose Barboza-Cortes' conviction for second degree identity theft with regard to an imitation Dava Construction check. I dissent from the majority's ruling that unlawful possession of a firearm does not pose an alternative means crime. I would also reverse the conviction for unlawful possession of a firearm.

## SOME FACTS

Wenatchee police officers executed a search warrant to gather banking information and shoes at Jose Barboza-Cortes' residence. Barboza-Cortes, but no one else, was present at the time. Police officers found methamphetamine. On discovery of the methamphetamine, law enforcement ceased the search until Corporal Nathan Hahn procured an amended search warrant to include seizure of methamphetamine.

No. 34356-1-III
*State v. Barboza-Cortes* (concur in part/dissent in part)


During the reinstated search, Sergeant Richard Johnson recovered a Stevens model pump-action shotgun between two mattresses in the bedroom. Officers needed to pull the mattresses apart. Sergeant Johnson found no shotgun shells. Corporal Nathan Hahn then sought and obtained a second amended search warrant to allow seizure of firearms. Law enforcement took the shotgun but never tested it for fingerprints. The officers never saw Jose Barboza-Cortes holding the shotgun and never knew who brought the shotgun into the residence.

## SOME PROCEDURE

During trial, the State presented no testimony that Jose Barboza-Cortes owned the firearm found in his residence. Thereafter defense counsel proposed a jury instruction, for the second degree unlawful possession of a firearm charge, which read that, in order to convict Barboza-Cortes of the charge, the jury must find the following elements beyond a reasonable doubt:

> (1) That on or about the second day of February, 2015, the defendant knowingly had a firearm in his possession or control;
> (2) That the defendant had previously been convicted of a felony; and
> (3) That the possession or control of the firearm occurred in the State of Washington.

Clerk's Papers (CP) at 195-96. The trial court declined to deliver Jose Barboza-Cortes' proposed instruction and instead instructed the jury that, in order to convict Barboza-

2

Cortes of second degree unlawful possession of a firearm, the jury must find the following elements beyond a reasonable doubt:

> (1) That on or about the 5th day of February, 2015, the defendant knowingly *owned,* possessed or had in his control a firearm;
> (2) That prior to *owning*, possessing, or having the firearm under his control, the defendant had been convicted of a felony; and
> (3) That the acts occurred in the State of Washington.

CP at 207, 225 (emphasis added).

In closing argument, the State argued that the only evidence presented showed that Jose Barboza-Cortes possessed no financial information about Dava Construction. The prosecution stated:

> On the Dava Construction check, the bank—Ms. Cochran, from Cashmere Valley Bank, indicated, well that check, actually, wasn't even legitimate, to begin with. You are not being asked if that check was a stolen check or not.

Report of Proceedings (RP) (Feb. 25, 2016) at 402. The State's attorney added:

> [t]he checks—except for the Dava construction check—also have financial information on them. And, as, probably many of you know, you have an account number and a routing number, on the bottom of those checks. That's financial information.

RP (Feb. 25, 2016) at 424-25. The State argued that the checks, other than the Dava Construction check, contained both identifying information and financial information.

During closing argument, the State argued that Jose Barboza-Cortes possessed and controlled dominion over the Stevens model shotgun. The State did not argue that Barboza-Cortes owned the firearm.

3

SECOND DEGREE UNLAWFUL POSSESSION OF A FIREARM

Jose Barboza-Cortes argues that the trial court committed error when failing to deliver a unanimity jury instruction for the charge of unlawful possession of a firearm in the second degree. He seeks reversal of his conviction for this crime. To address whether the trial court should have given a unanimity instruction, I must first determine if unlawful possession of a firearm is an alternative means crime. I later address whether evidence sufficed to convict Jose Barboza-Cortes on each of the alternative means of committing unlawful possession of a firearm.

The trial court instructed the jury that Jose Barboza-Cortes committed the crime, if "on or about the 5th day of February, 2015, the defendant knowingly *owned*, *possessed or* had in his *control* a firearm." CP at 207 (emphasis added). The trial court did not instruct the jury it must be unanimous in its verdict as to whether Barboza-Cortes owned the firearm, possessed the firearm, or controlled the firearm. Barboza-Cortes contends that he was entitled to a unanimity jury instruction on the charge of second degree unlawful possession of a firearm because of the alternate means of committing the crime. The State answers that the trial court did not err when failing to render a unanimity instruction for unlawful possession of a firearm in the second degree because RCW 9.41.040(2)(a) does not create alternate means to commit the crime.

The alternative means determination relates to the constitutionally protected right of jury unanimity required under article I, section 21 of the Washington Constitution.

4

*State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014). An alternative means crime results from multiple means of proving the charge. *State v. Owens*, 180 Wn.2d at 96. When the State may present compound means of proving the crime, the trial court must instruct the jury that it must be unanimous as to the particular means on which it convicts, unless sufficient evidence supports each of the alternative means. *State v. Owens*, 180 Wn.2d at 95.

The legislature has not defined what constitutes an alternative means crime or designated which crimes comprise alternative means crimes. *State v. Owens*, 180 Wn.2d at 96. Therefore, the courts must determine whether a crime constitutes an alternative means crime by reviewing each statute on its own merits. *State v. Owens*, 180 Wn.2d at 96. We must review the nature of the language employed with regard to differing methods to commit the crime.

In one sense, any statute that lists more than one action when defining the crime creates an alternative means crime. Nevertheless, the law does not deem any such statute to construct an alternative means crime if the actions, be they described by verbs, nouns, or prepositional phrases, vary inconsequentially in meaning. Alternative means should be probed based on how varied the actions are that could constitute the crime. *State v. Owens*, 180 Wn.2d at 97. If no single action expressed in the statute can be completed without simultaneously completing at least one other action, the various acts are too similar to constitute distinct alternative means. *State v. Butler*, 194 Wn. App. 525, 530,

5

374 P.3d 1232 (2016). Because some differing ways of committing a crime may be close in nature and some not close in nature, a crime may be a limited alternative means crime.

Jose Barboza-Cortes principally relies on *State v. Holt*, 119 Wn. App. 712, 82 P.3d 688 (2004). The State agrees that *State v. Holt*, 119 Wn. App. 712 holds that second degree unlawful possession of a firearm is an alternative means offense committed when a convicted felon (1) owns, (2) possesses, or (3) controls a firearm. The State, however, criticizes the decision and asks that we issue a contrary ruling.

In *State v. Holt*, Division Two of this court wrote:

> Second degree unlawful possession of a firearm is an alternative means offense committed when a convicted felon (1) owns, (2) possesses, or (3) controls a firearm. RCW 9.41.040(1)(b).

*State v. Holt*, 119 Wn. App. at 718. I consider the *Holt* ruling to be dicta. The court engaged in no analysis before holding unlawful possession of a firearm to be an alternative methods crime. The court eventually held that it need not address Bobby Holt's assignment that the trial court erred for withholding a unanimity instruction because Holt proposed the jury instruction delivered by the trial court. *Holt* also has the distinguishing feature that the trial court only instructed the jury that it could convict Holt of unlawful possession of a firearm if he possessed or controlled a firearm. The instructions did not place into issue any ownership of the firearm. Therefore, I perform an independent analysis of whether second degree unlawful possession of a firearm constitutes an alternative means crime.

6

The controlling statute, RCW 9.41.040, declares, in portion:

> (2)(a) A person . . . is guilty of the crime of unlawful possession of a firearm in the second degree, if the person . . . owns, has in his or her possession, *or* has in his or her control any firearm:
> (i) After having previously been convicted . . . in this state or elsewhere of any felony not specifically listed as prohibiting firearm possession under subsection (1) of this section. . . .

(Emphasis added.) Note that the disjunctive "or" separates the verbs "owns," "possesses," and "controls." The court's jury instruction followed this language. Employment of English grammar rules about the disjunctive conjunction should lead one to conclude that unlawful possession of a firearm constitutes an alternative means crime with three alternate means, but sometimes law does not follow grammar perhaps because legislators are not grammarians.

Use of the disjunctive "or" in a list of methods for committing the crime does not necessarily create alternative means of committing the crime. *State v. Peterson*, 168 Wn.2d 763, 770, 230 P.3d 588 (2010). An alternative means analysis places less weight on the use of the disjunctive "or" and more weight on the distinctiveness of the verbs or nouns that form the criminal conduct. *State v. Sandholm*, 184 Wn.2d 726, 735, 364 P.3d 87 (2015). The more varied the criminal conduct, the more likely the statute describes alternative means. *State v. Sandholm*, 184 Wn.2d at 734. But when the statute describes minor nuances inhering in the same act, the more likely the various "'alternatives'" are merely facets of the same criminal conduct. *State v. Sandholm*, 184 Wn.2d at 734.

7

The State emphasizes *State v. Owens*, 180 Wn.2d 90 (2014) and *State v. Butler*, 194 Wn. App. 525 (2016). In *Owens*, the state Supreme Court addressed whether RCW 9A.82.050, the trafficking in stolen property statute, creates an alternative means crime. The court held the crime to encompass two alternative methods rather than the eight methods declared by this court. RCW 9A.82.050(1) reads:

> [a] person *who knowingly initiates, organizes, plans, finances, directs, manages, or supervises* the theft of property for sale to others, *or who knowingly* traffics in stolen property, is guilty of trafficking in stolen property in the first degree.

Division One of the Court of Appeals held that RCW 9A.82.050(1) describes eight alternative means: knowingly (1) initiating, (2) organizing, (3) planning, (4) financing, (5) directing, (6) managing, or (7) supervising the theft of property for sale to others, or (8) knowingly trafficking in stolen property. The Supreme Court disagreed and adopted the approach taken by Division Two in *State v. Lindsey*, 177 Wn. App. 233, 311 P.3d 61 (2013). Analyzing the statute as a whole, RCW 9A.82.050(1) describes only two alternative means of trafficking in stolen property. The placement and repetition of the word "knowingly" suggests that the legislature intended two means. The first "knowingly" relates to all seven terms in the first part of the statute as a group. Similarly, the phrase "the theft of property for sale to others" relates to the entire group. Treating these terms as a group indicates that they represent multiple facets of a single means of committing the crime. If the statute described eight means, there would be no need to use

8

the word "knowingly" again.

The Supreme Court in *State v. Owens* also reasoned that the first group of seven terms relates to different aspects of a single category of criminal conduct, facilitating or participating in the theft of property so that the purloined materials can be sold. As a result, the seven verbs acted as definitions of "facilitating" or "participating." Trafficking in stolen property involves a second, separate category, of transferring possession of property known to be stolen, defined separately in the definitional section of the statute.

In *State v. Butler*, 194 Wn. App. 525 (2016), this court recently analyzed the identity theft statute at issue in this case and discussed later. The court concluded that RCW 9.35.020 is not an alternative means statute. The statute declares:

> (1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.
> . . . .
> (3) A person is guilty of identity theft in the second degree when he or she violates subsection (1) of this section under circumstances not amounting to identity theft in the first degree. . . .

The *Butler* court compared the four verbs used to describe identity theft to the seven verbs in *State v. Owens*, holding:

> [t]he verbs here are not distinct means by which to commit identity theft, but rather are multiple facets of a single means. For instance, following the analysis in *Owens*, it would be hard to imagine the crime of identity theft being committed by a single act of "using" a check that did not also involve "obtaining" and "possessing" the check. Likewise, one could not "transfer" financial information without also "obtaining" and "possessing" that information.

9

*State v. Butler*, 194 Wn. App. at 530. The court rejected the argument that the four verbs differed because not all of the terms interconnected. Karon Butler underscored that one could "obtain" financial information without "using" or "transferring" the information. The court answered that the same argument existed regarding the terms in *Owens*. A person might "finance" or "initiate" a theft without "managing" or "supervising" the crime. The *Butler* court reasoned that every verb need not correspond with every other verb in order to be considered a single means. The court concluded:

> [b]ecause no single action in the statute could be completed without simultaneously completing at least one other action, the various acts are too similar to constitute distinct alternative means.

*State v. Butler*, 194 Wn. App. at 530.

In Jose Barboza-Cortes' appeal, I must determine the proximity in thought and action of the three verbs "own," "possess," and "control" in relation to a firearm as found in RCW 9.41.040(2)(a). I find the words "possess" and "control" similar in nature such that, if the statute contained only the two verbs, RCW 9.41.040(2)(a) would not constitute an alternative means crime. If one possesses the firearm, one necessarily exercises some control over the weapon. If one controls the firearm, one generally actually or constructively possesses the weapon. The law often equates control with possession. *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969); *State v. Summers*, 107 Wn. App. 373, 383-84, 28 P.3d 780, 785, 43 P.3d 526 (2001).

10

But RCW 9.41.040(2)(a) contains a third verb, "own." The act of ownership is significantly different from possession or control. Four months ago, I lent my car jack to a stranded motorist. Despite providing the motorist with my name and phone number, the motorist has never returned the jack. I remain the owner of the car jack, but I lack possession or control over the instrument. Because of the distinct nature of ownership from possession, the motorist could be prosecuted for a crime. The landlord of rental premises lacks possession over the property and holds little control over the property's use. The law shields the landlord from criminal liability for the crimes of the tenant except in circumcised circumstances. *State v. Roberts*, 80 Wn. App. 342, 356, 908 P.2d 892 (1996). The lessor of a rental car lacks possession and control over the operation of the car. Therefore, I conclude second degree unlawful possession of a firearm, under RCW 9.41.040(2)(a), constitutes a limited alternative means crime with ownership being a distinct means.

One impediment in resolving the question of whether unlawful possession of a firearm under RCW 9.41.040(2)(a) constitutes an alternative means crime is the lack of foreign and Washington law to assist. In many Washington reported decisions, the trial court instructed the jury that the defendant committed the crime if he or she possessed or controlled the weapon but omitted from the instruction ownership of the firearm. *State v. Releford*, 148 Wn. App. 478, 495, 200 P.3d 729 (2009); *State v. Holt*, 119 Wn. App. 712 (2004); *State v. Shouse*, 119 Wn. App. 793, 796, 83 P.3d 453 (2004). Many foreign

11

statutes only prohibit the possession of a firearm by a felon. N.Y. PENAL LAW § 265.02 (New York); 720 ILL. COMP. Stat. 5/24-1.1 (Illinois); TEX. PENAL CODE ANN. § 46.04 (Texas). A federal statute that prohibits movement of firearms in interstate commerce by one convicted of a crime, punishable by imprisonment exceeding one year, prohibits possession, but not ownership, of a firearm. 18 U.S.C. § 922(g)(1) (statute declared unconstitutional as applied in *Binderup v. Attorney General United States*, 836 F.3d 336 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 2323 (2017). The fact that other states and the United States Congress only prohibit possession suggests that ownership is distinct from possession.

In *United States v. Casterline*, 103 F.3d 76 (9th Cir. 1996), the circuit court of appeals noted that 18 U.S.C. § 922(g)(1) does not ban ownership and ownership does not equate with possession. The court suggested that one could transfer possession of a firearm, such as to a pawnshop, during the period of a felon's disability without violating the law when the statute does not prohibit ownership of the firearm.

In *Jackson v. State*, 1 Kan. App. 2d 744, 573 P.2d 637 (1977), the Kansas intermediate appellate court denied the accused's application for a new trial on charges that he unlawfully possessed a firearm. The accused presented purportedly newly discovered evidence that someone else owned the weapon. The court reasoned that, even assuming such evidence to be true, ownership of the gun lacks relevance because the accused was convicted only of possession.

Because I conclude that unlawful possession of a firearm is in part an alternative means crime, I must now review whether sufficient evidence supports each alternate means. In alternative means cases, when substantial evidence supports all alternative means submitted to the jury, unanimity as to the means is not required. *State v. Armstrong*, 188 Wn.2d 333, 340, 394 P.3d 373 (2017); *State v. Woodlyn*, 188 Wn.2d 157, 164, 392 P.3d 1062 (2017). Conversely, if insufficient evidence supports any of the means, the constitution demands a particularized expression of juror unanimity. *State v. Woodlyn*, 188 Wn.2d at 165. When insufficient evidence supports one of the alternative means charged and the jury does not specify that it unanimously agreed on the other alternative, we face the danger that the jury rested its verdict on an invalid ground. *State v. Armstrong*, 188 Wn.2d at 343-44.

I note two anomalies regarding the alternative means crime rule of sufficient or substantial evidence. First, the constitution demands that one be convicted of a crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 362, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). One might conclude then that, on review before an appellate court, the State must provide overwhelming evidence or proof beyond a reasonable doubt of guilt for each alternative means so that we do not face a compromise of jury unanimity. No decision forwards such a proposition. Second, one might reason that, if the State provides overwhelming evidence of guilt on one of the alternative means, harmless error saves the verdict from reversal. After all, a unanimous jury could convict the accused of

13

the crime if the evidence supports only one alternative means beyond a reasonable doubt. No decision supports this proposition.

I agree that the State provided sufficient evidence that Jose Barboza-Cortes possessed and controlled the Stevens model shotgun. I conclude, however, that the State provided insufficient or insubstantial evidence of ownership of the shotgun. Some of the reasons previously listed for why second degree unlawful possession of a firearm constitutes an alternative means crime supports a conclusion that the State provided insufficient evidence to convict of ownership of the shotgun. Possession and control comprise different concepts from ownership.

The State contends that substantial circumstantial evidence supports a finding that Jose Barboza-Cortes owned the embedded shotgun. The State emphasizes that Barboza-Cortes must have owned all possessions in his basement apartment, particularly any personal property between mattresses. But common experience does not link possession with ownership. The law also declares that possession is not ownership. *Hartford Accident & Indemnity Co. v. Goossen*, 84 Cal. App. 3d 649, 653, 148 Cal. Rptr. 784 (1978); *Cook v. Revenue Division of Michigan Department of Treasury*, 396 Mich. 176, 240 N.W.2d 247, 251 (1976); *Godwin v. McGehee*, 19 Ala. 468, 471 (1851).

The State highlights that law enforcement found the firearm between two mattresses and that Barboza-Cortes was the only tenant in the basement. Nevertheless, even if Barboza-Cortes inserted the gun between the mattresses, it does not follow that he

14

owned the firearm. He could have hidden the firearm for a friend. The State underscores that Jose Barboza-Cortes conceded that he owned the methamphetamine found in the apartment. If anything, this emphasis harms the State's position, since Barboza-Cortes never conceded he owned the firearm.

In the civil context of the family car doctrine, the Washington Supreme Court adopted the following factors in determining who owns an automobile: (a) who paid for the car, (b) who had the right to control the use of the car, (c) the intent of the parties who bought and sold the car, (d) the intent of the parents and the child relative to ownership, (e) to whom did the seller make delivery of the car, (f) who exercised property rights in the car from the date of its purchase to the date of the accident, and (g) any other circumstantial evidence that may tend to establish the fact of ownership. *Coffman v. McFadden*, 68 Wn.2d 954, 958-59, 416 P.2d 99 (1966). In Jose Barboza-Cortes' prosecution, the State presented no testimony concerning the registration of the firearm, the purchaser of the shotgun, who had the right to control the gun, who placed the gun between the mattresses, how long the firearm had been present in the mattresses, who handled the gun, or who used the gun. The State never even argued to the jury that Jose Barboza-Cortes owned the shotgun.

I would vacate Jose Barboza-Cortes' conviction of unlawful possession of a firearm and remand for a new trial on the charge.

SECOND DEGREE IDENTITY THEFT

I agree with the lead author's analysis with regard to second degree identity theft being an alternative means crime when distinguishing between financial information and means of identification. I add the following comments.

A statute divided into subparts is more likely to designate alternative means. *State v. Butler*, 194 Wn. App. at 528 (2016); *State v. Lindsey*, 177 Wn. App. at 241 (2013). Similarly a statute that defines terms separately is more likely to create an alternative means crime. The separate definitions define distinct acts or, in our appeal, distinct subject matters to which a criminal act adheres. Some cases hold that definitional statutes do not create additional alternative means for a crime. *State v. Smith*, 159 Wn.2d 778, 785, 154 P.3d 873 (2007); *State v. Linehan*, 147 Wn.2d 638, 646, 56 P.3d 542 (2002). Nevertheless, in each case the statute gave definition to one word not separate definitions for distinct words or phrases.

The State argues that, since it presented no evidence of Jose Barboza-Cortes' use of Dava Construction's financial information, the jury must have based its verdict only on the alternative means of obtaining, possessing, or using the construction company's means of identification. The State even conceded during oral argument that no evidence supported the taking of financial information of Dava Construction. Therefore, the State asks us to uphold the jury verdict. The State cites no case supporting its argument. The State does not contend the jury was bound by its concession. The State's contention

16

No. 34356-1-III
*State v. Barboza-Cortes* (concur in part/dissent in part)

would probably nullify the requirement of jury unanimity in an alternative means crime,
since the State can always argue, in prosecutions when it failed to provide insufficient
evidence of one of the alternate methods, that the jury must have based its decision on the
means on which it presented substantial evidence.

_____
Fearing, J.

17